Rafael URISTA, Appellant,

v.

BED, BATH, & BEYOND, INC., Appellee.

No. 01–02–00150–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 18, 2007.

Rehearing Overruled Aug. 30, 2007.

Jonathan Scott Stoger, Thomas N. Thurlow, Thurlow & Associates, Houston, for appellant.

Evelyn Ailts Derrington, Neal David Kieval, Michael Phillips, Phillips & Akers, P.C., Jonathan Christopher Kieschnick, Houston, for appellee.

Panel consists of Justices TAFT, JENNINGS, and ALCALA.

## OPINION ON REHEARING
## AFTER REMAND

ELSA ALCALA, Justice.

Appellant, Rafael Urista, moved for rehearing from our Opinion on Remand, which issued August 9, 2007, asserting that we failed to consider his issue regarding the improper submission of the "new and independent cause" instruction and that he did, in fact, preserve error on the improper limitation of voir dire. We grant Urista's motion for rehearing only regarding the jury instruction issue, withdraw our prior Opinion on Remand, and substitute this opinion in its place.

Appellant, Rafael Urista, appeals from a take-nothing jury verdict entered against him in his personal injury suit against appellee, Bed, Bath, and Beyond, Inc. ("BBB"). In our opinion on rehearing, this Court reversed and remanded based on the trial court's submission of an unavoidable accident instruction. *Urista v. Bed, Bath, & Beyond, Inc.*, 132 S.W.3d 517, 523 (Tex.App.-Houston [1st Dist.] 2004) (*Urista I*), *rev'd by Bed, Bath, & Beyond, Inc. v. Urista*, 211 S.W.3d 753 (Tex.2006) (*Urista II*). On BBB's petition for review of our decision, the Texas Supreme Court held that the trial court's submission of the unavoidable accident instruction was not reversible error and remanded the case for our consideration of Urista's remaining issues. *Urista II*, 211 S.W.3d at 759–60.

In his remaining four issues that we address on remand, Urista contends that the trial court committed reversible error during jury selection and instructing the jury on "new and independent cause" and that the jury's verdict was against the great weight and preponderance of the evidence. We conclude that the trial court did not abuse its discretion by denying Urista's requested challenges for cause and that Urista failed to preserve for appeal his other challenges to the trial court's rulings during voir dire examination. We also conclude that the new-and-independent-cause instruction was harmless and that the evidence is factually sufficient to uphold the jury's verdict. We affirm.

## Background

On September 19, 1998, while shopping at a BBB store, Urista was hit in the head and knocked unconscious by plastic trash

cans that fell from a store shelf. Reginald Neal, a store employee, was attempting to remove items from the shelf when the trash cans fell. Upon learning of the incident, David Traxler, a general manager with the store, approached Urista and filled out an accident report. Urista did not report serious injury at that time. Five weeks later, Urista claimed injury and photographed the store in preparation for his personal-injury lawsuit against BBB. Urista claimed that he suffered a degenerative back condition as a result of being hit by the trash cans.

At trial, the court allowed each of the attorneys the opportunity to question the panel during group voir dire, followed by individual voir dire of certain individuals who, during group voir dire, suggested they had an inability to follow the law. After a jury was seated, Urista presented evidence that Neal negligently caused the trash cans to fall. However, on cross-examination, Urista testified, among other things, that he had injured his back twice before: in 1995 in an automobile accident and in 1996 while at work. The jury found that BBB was not negligent, and the trial court entered a take-nothing judgment in favor of BBB.

### Challenge for Cause Granted

In his first issue, Urista asserts that the trial court erroneously granted BBB's challenge for cause against prospective juror number 26. BBB contends that Urista waived this issue because he did not object to the trial court's exclusion of juror number 26.

■ In general, voir dire objections must be timely and plainly presented. *Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 759 (Tex.2006); *see, e.g., Hallett v. Houston Nw. Med. Ctr.*, 689 S.W.2d 888, 889–90 (Tex.1985) (holding that appellant waived trial court's error in failing to excuse juror for cause by not informing court before exercise of peremptory challenges that counsel lacked sufficient peremptory challenges to remove all objectionable jurors); *see also* Tex.R.App. P. 33.1(a)(1) (timely objection to trial court required to preserve complaint for appeal). We find no reported civil cases in which the appellant objected to the trial court's *grant* of his opponent's challenge for cause, but we note that this situation has arisen in the criminal context. *See, e.g., Ortiz v. State*, 93 S.W.3d 79, 88 (Tex.Crim. App.2002); *Purtell v. State*, 761 S.W.2d 360, 365 (Tex.Crim.App.1988). As the supreme court has relied on pronouncements of its "sister court" on issues of voir dire, so do we, too, look to the Court of Criminal Appeals for guidance here. *See Hyundai Motor Co.*, 189 S.W.3d at 752–53; *Cortez v. HCCI–San Antonio, Inc.*, 159 S.W.3d 87, 91 (Tex.2005). In criminal cases, a party must object to a trial court's grant of a challenge for cause before he may complain of that action on appeal. *Ortiz*, 93 S.W.3d at 88; *Purtell*, 761 S.W.2d at 365. This principle also applies to the safeguarding of similar rights in civil cases.

■ The record shows that in granting BBB's challenge to juror number 26, the trial court stated, "These are the ones I'm excusing for cause. If you really disagree, you can talk to them and let me know ... so those are the people that I am granting the motions to excuse for cause at this time." Just before the attorneys began making their peremptory strikes, the record shows that the trial court formally excused for cause juror number 26. At no point in the proceedings did Urista's attorney request that the trial court bring juror number 26 forward for individual questioning, nor did the attorney object to the trial court's ruling granting the challenge for cause of this juror. Because Urista did not object when the trial court granted

BBB's challenge for cause, we hold that Urista has waived his complaint on appeal. *See* Tex.R.App. P. 33.1(a)(1).

We overrule Urista's first issue.

## Challenges for Cause Denied

In his second issue, Urista asserts that the trial court erred in denying his motion to strike two prospective jurors, juror number 5 and juror number 20, for cause. Urista used peremptory strikes on these jurors, resulting in two objectionable jurors serving on the jury.

### A. Preservation of Error

■ BBB contends that Urista failed to preserve error concerning the trial court's denial of Urista's requested challenges for cause. To "preserve error when a challenge for cause is denied, a party must use a peremptory challenge against the veniremember involved, exhaust its remaining challenges, and notify the trial court that a specific objectionable veniremember will remain on the jury list." *Cortez*, 159 S.W.3d at 90–91 (citing *Hallett*, 689 S.W.2d at 890). "This ensures that 'the court is made aware that objectionable jurors will be chosen' while there is still time 'to determine if the party was in fact forced to take objectionable jurors.'" *Id.* at 91. The supreme court held in *Cortez* that error concerning the trial court's denial of a challenge for cause requested by Cortez was preserved under circumstances that showed that (1) Cortez "gave notice to the trial court before or after he delivered his strike list" in a manner such that the notice was "roughly contemporaneous," (2) Cortez's notice was given before the jury was seated, and (3) the trial court stated on the record "it's preserved." *Id.* Here, before the jury was seated and at about the same time that Urista turned in his strike list, Urista reasserted his objections to jurors 5 and 20, reporting to the court that he was using peremptory strikes on these jurors and identifying the objectionable jurors who would be seated on the jury due to the trial court's denial of the challenges for cause. We conclude that, under *Cortez*, error is preserved. *See id.*

### B. Juror Bias or Prejudice

■ Urista contends that the trial court erred by failing to grant his challenge for cause on jurors 5 and 20 because they exhibited signs of bias or prejudice. We review a trial court's ruling on a challenge for cause for abuse of discretion. *Id.* at 93.

■ Voir dire examination allows parties to expose possible improper juror biases that form the basis for disqualification and enables parties to intelligently exercise their peremptory strikes. *Hyundai Motor Co.*, 189 S.W.3d at 749. "Bias, in its usual meaning, is an inclination toward one side of an issue rather than to the other, but to disqualify, it must appear that the state of mind of the juror leads to the natural inference that he will not or did not act with impartiality." *Id.* at 751. However, statements that reflect a juror's judgment about the facts of a case as presented, rather than an external unfair bias or prejudice, do not amount to a disqualifying bias. *Id.*; *Cortez*, 159 S.W.3d at 94. In *Cortez*, a nursing home negligence case, a juror, who had worked as an insurance adjuster, stated during voir dire that the defendants would be "starting out ahead," due to his personal bias against lawsuit abuse. *Id.* at 90. The supreme court explained, however, that "the relevant inquiry is not where jurors *start* but where they are likely to *end*. An initial 'leaning' is not disqualifying if it represents skepticism rather than an unshakeable conviction." *Id.* at 94.

■ Challenges for cause do not turn on the formulaic use of specific words. *Id.* at 93. "Veniremembers may be disqualified even if they say they can be 'fair and impartial,' so long as the rest of the record shows they cannot. By the same token, veniremembers are not necessarily disqualified when they confess 'bias,' so long as the rest of the record shows it is not the case." *Id.*

■ During group voir dire, Urista's attorney discussed the specific evidence that he intended to introduce in the case, followed by a question to the jurors regarding how they would assess that evidence. The record shows that Urista's attorney stated,

> The evidence in this case, and I need to bring this up, is going to show you that in 1996, Mr. Urista had a work related injury while he worked in Austin. He hurt his low back. And it was a significant injury. Took him about 18 months to recover. You'll also hear in the case that for the next 14 months, Mr. Urista lived a normal life with this family. He had healed, until he walked into Bed, Bath & Beyond that day. And I'm going to bring you the evidence about the 1996 injury. We're going to talk about it at length, the medical care and so forth. But is there anybody that [sic] thinks that you would have difficulty knowing he had a prior injury, although he recovered from it, would have difficulty knowing he had an injury that dealt with the same part of his body? Raise those hands up.

Jurors numbers 5 and 20 responded to this inquiry.

### 1. Responses by Juror Number 5

Juror number 5 said during the group voir dire, "Well, since he got a prior incident, and here goes another incident—I don't know ... if he went to trial for the other one also, I would have to hear all the evidence." Juror number 5 said that since Urista's attorney told her that Urista had a prior injury, it would make it difficult for her "to judge it equally and fairly." During individual questions of juror 5, the juror initially related that she would hold Urista to "a greater burden of proof than what the law says in a civil case" and that Urista would have a "higher burden" to prove more than what the law required. However, upon further questions by BBB's attorney and the trial court, juror 5 said that she "would follow what the Court says the law is," she would base her verdict on the law as given to her by the Court, she would "sit fairly," and "evaluate the facts of the case."

### 2. Responses by Juror Number 20

During group voir dire, juror number 20 responded to Urista's attorney's question by agreeing with counsel that "[p]reponderance is out the window." Upon individual questioning, juror number 20 acknowledged that "without having heard anything from the stand, Mr. Phillips and Bed, Bath & Beyond" are "slightly" ahead, and that it was "not even." When Urista's attorney said, "Nothing in the world is going to change to make it even, is it, no matter what anybody says," the juror responded "No." During the trial court's questioning, juror number 20 said that the reason that she was "weighted in favor of the defendant" was "solely because the plaintiff has said that there was a back injury in the same part of the body." Juror number 20 said that she "would be able to wait and hear the evidence in the case and be fair to both sides."

### 3. Analysis

Although jurors 5 and 20 initially said they would have difficulty judging the case equally and fairly, those statements were in response to Urista's attorney's questions presenting the actual facts in the

case, which is not a proper ground for disqualification because a party is entitled to a fair jury, not to a favorable jury. *See Hyundai Motor Co.*, 189 S.W.3d at 749–50; *Cortez*, 159 S.W.3d at 94. As the trial court expressed when denying Urista's challenge for cause to number 20, Urista's claim of bias or prejudice was similar to asking a juror, "Would you be prejudiced against my client because my client ran a red light and got in an accident?" The jurors reported a willingness to listen to the evidence, fairly evaluate the facts in the case, and apply the law as given by the judge. We conclude that the trial court did not abuse its discretion by denying Urista's challenges for cause of jurors 5 and 20 because the record fails to show any disqualifying external bias or prejudice. *See Cortez*, 159 S.W.3d at 91, 93–94; *see also Hyundai Motor Co.*, 189 S.W.3d at 751.

We overrule Urista's second issue.

### Limitation of Individual Voir Dire

In his third issue, Urista contends that the trial court erred in denying him the opportunity to further question prospective jurors 29, 32, and 33 regarding their ability to award mental anguish damages. These jurors were part of the group voir dire, but were not individually questioned by the attorneys. Urista complains that the trial court reversed its decision to allow individual questioning of these three prospective jurors after the court had related that it would allow individual questioning of jurors. Although Urista's attorney was allowed to question many of the prospective jurors individually, the trial court did not allow him to question these three jurors individually.

To preserve a complaint that a trial court improperly restricted voir dire, a party must alert the trial court as to the specific manner in which it intends to pur-

sue the inquiry. *Hyundai Motor Co.*, 189 S.W.3d at 758 (finding error waived by party's failure to "frame additional inquiries or convey to the trial court that the thrust of any remaining questions would be different from the single one presented for a ruling"). The court explained that to preserve error, the trial court must be given the "opportunity to cure any error, obviating the need for later appellate review, and further [allow] an appellate court to examine the trial court's decision in context to determine whether error exists, and if so, whether harm resulted." *Id.* "Thus, the Court traditionally has adhered strictly to the principle that voir dire objections must be timely and plainly presented." *Id.* at 759.

During voir dire of the group of prospective jurors, Urista's attorney questioned the panel concerning mental anguish, by asking "Is there anybody that is philosophically opposed to awarding someone damages for anything like mental anguish . . .?" and by asking whether the jurors "would have trouble following the Court's instructions." The record shows that jurors 8, 11, 16, and 21 responded to this question. The record does not include any response to this question concerning mental anguish damages by the three jurors that Urista complains of here, prospective jurors 29, 32, and 33.

The trial court individually brought prospective jurors 29, 32, and 33 to the bench and the court questioned each of the jurors, but did not allow the attorneys to ask any further questions of the individual jurors. The court inquired of each juror whether there was any reason that the juror would not be able to listen to the instructions about the law and be fair to both sides in the case. Each juror reported that he or she could follow the law and be fair to both sides in the case.

■ Urista's attorney requested the opportunity to individually question the three jurors because "they said they could not award money for mental anguish," but the court responded to the request by stating, "I don't think that's a proper characterization of what they said." The trial court also said that "after we're done," Urista's attorney would be allowed to "make a record" concerning the trial court's refusal to allow individual questioning of the jurors. After the trial court ruled on all the challenges for cause, Urista's attorney stated, "I'm sorry, Judge, I do have a couple of things I would like to put on the record. Does the Court want me to do that after the jury is let go?" The trial court responded in the affirmative. While the jury was in recess and before he began making his peremptory strikes, Urista's attorney objected to the trial court's refusal to allow individual voir dire of the three jurors because he had relied on the trial court's earlier representation that it would be allowed. Urista's attorney said that had he known the trial court would not be allowing the individual voir dire, he would have further explored biases and prejudices of these three jurors while conducting voir dire of the group.

In his objections to the trial court's refusal to allow the individual voir dire of these three jurors, Urista's attorney said that he was "not able to ask the questions that [he] needed to ask in order to present them" and that he was "denied the opportunity to go into some areas due to the Court's instructions." After confirming that Urista had made all the objections he wished to make, the trial court stated,

> The Court will note for the record that counsel has mischaracterized the instructions given to counsel, both on the record and off the record regarding voir dire. And the Court afforded the parties 30 minutes to conduct voir dire and, then, to move for grounds for disqualifi-

cation. And I did inform counsel that they would be able to have [venire members] approach the Bench, so they could follow-up on specific areas, which have already been covered, not so that they could have free reign to do additional voir dire. And also mention to counsel that he spent a significant time arguing the facts of the case and arguing the law, as opposed to asking questions. Also for the record, that counsel has not suggested or put on the record, prior to me making this ruling, any specific questions which he was denied the opportunity to ask. Therefore, I'm overruling the objection.

■ To preserve error from the denial of the opportunity to conduct voir dire, Urista had the burden to make a record to show the specific manner in which he intended to pursue his inquiry. *See Hyundai Motor Co.*, 189 S.W.3d at 758. When group voir dire on the subject matter complained of on appeal has been allowed, error is not preserved unless counsel identifies the specific areas of inquiry he wishes to pursue during individual voir dire. *See id.* The trial court allowed voir dire about mental anguish damages, and these jurors did not respond. *See id.* We hold that because Urista failed to plainly present an objection to the trial court that included the specific areas of inquiry he wished to pursue, he failed to preserve any error for our review. *See id.*

We overrule Urista's third issue.

### Charge Error

■ In his fourth issue, Urista contends that the trial court erred in submitting, over Urista's objection, the following instructions in the jury charge:

> An occurrence may be an "unavoidable accident," that is, an event not proxi-

mately caused by the negligence of any party to it.

"New and independent cause" means the act or omission of a separate or independent agency, not reasonably foreseeable, that destroys the causal connection, if any, between the act or omission inquired about and the occurrence in question and thereby becomes the immediate cause of such occurrence.

We review charge error under an abuse of discretion standard. *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex.2000). The trial court is required to submit requested instructions to the jury only if the pleadings and evidence support them. TEX.R. CIV. P. 278; *Harris County v. Smith*, 96 S.W.3d 230, 236 (Tex.2002) (citing *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex.1992)).

### A. Unavoidable Accident

The supreme court held that the trial court's inclusion of the unavoidable accident instruction in this case was harmless error. *Urista II*, 211 S.W.3d at 759–60. We will not revisit that issue.

### B. New and Independent Cause

Urista also contends that the trial court erred in submitting to the jury an instruction on "new and independent cause" when no evidence was introduced to support such a finding.

A "new and independent cause" is defined as an act or omission of a separate and independent nature which destroys the causal connection between the negligent act or omission of the tortfeasor and the injury complained of, and thereby becomes the immediate cause of such injury. *Darwin v. Fugit*, 914 S.W.2d 621, 626 (Tex.App.-Fort Worth 1995, writ denied) (citing *Galvan v. Fedder*, 678 S.W.2d 596, 598 (Tex.App.-Houston [14th Dist.] 1984, no writ)); *Young v. Massey*, 128 Tex. 638, 641, 101 S.W.2d 809, 810 (1937). Here, BBB did not present any evidence that

Urista's injury resulted from the act or omission of a separate and independent nature. Consequently, the trial court erred in submitting the new-and-independent-cause instruction. *See Darwin*, 914 S.W.2d at 626.

But to obtain reversal of a judgment based on charge error, Urista must show that the incorrect jury instruction probably caused the rendition of an improper judgment. TEX.R.APP. P. 44.1(a)(1); *Urista II*, 211 S.W.3d at 757. It is a rare case in which the incorrect inclusion of "new and independent cause" in the jury charge is reversible error. *Galvan*, 678 S.W.2d at 599. After examining the record, we cannot conclude that the inclusion of the new-and-independent-cause instruction harmed Urista.

At trial, substantial evidence of other causes of Urista's injury was introduced, which mitigated against a finding that the incident at the BBB store was a proximate cause of Urista's injury. Testimony from Urista's wife and doctor established that, before the store incident, Urista had suffered two prior back injuries that required significant medical attention. These injuries resulted from the 1995 automobile accident and the 1996 work-related accident. The jury, faced with these prior instances, likely concluded that Urista's back injury resulted from prior events unrelated to the store incident. We cannot conclude that the new-and-independent-cause instruction *probably* caused an improper verdict.

Although the trial court erred in submitting instructions on "unavoidable accident" and "new and independent cause" in the jury charge, we hold that Urista has not shown that he was harmed by the inclusion of these instructions. *See* TEX.R.APP. P. 44.1(a)(1); *Urista II*, 211 S.W.3d at 757.

We overrule Urista's fourth issue.

## Factual Sufficiency

In his fifth issue, Urista challenges the factual sufficiency of the evidence supporting the jury's finding that BBB was not liable for Urista's injury. Urista had the burden of proof at trial. Therefore, to prevail on appeal, Urista must show that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 242 (Tex.2001). We must consider and weigh all of the evidence, and we will set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.; see Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex. 1986). In doing so, we must "detail the evidence relevant to the issue" and "state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict." *Dow Chem. Co.,* 46 S.W.3d at 242; *see also Pool,* 715 S.W.2d at 635.

However, we remain mindful that the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex.1986). The jury may believe one witness and disbelieve another and resolve inconsistencies in any testimony. *Id.* We cannot substitute our opinion for that of the jury or determine that we would have weighed the evidence differently or reached a different conclusion. *Hollander v. Capon,* 853 S.W.2d 723, 726 (Tex.App.-Houston [1st Dist.] 1993, writ denied).

In support of his claims, Urista testified and presented testimony from David Traxler, BBB's corporate representative, who was also the manager of the store where Urista claims he was hit by a trash can, and from his wife, Geovanna Urista, who was shopping with Urista when the incident occurred. Traxler testified as a representative of BBB. He said that an investigation was done, and that Urista was not negligent that day, nor was he aware of any evidence that any customers or other third parties caused the incident. He stated that trash cans fell that day, but so did other merchandise, and he said he did not know what hit Urista. Traxler "guessed" that a store employee knocked the trash cans down while standing on a ladder, working on the other side of the shelves. He said, "I believe that human error caused it. [A store employee] made a mistake and accidentally knocked it over. I don't think he was acting in an unsafe manner. I don't think he was doing anything to possibly cause an accident. I think he was aware of what he was doing and made a mistake." In addition, Traxler noted that by the time he arrived at the scene, the area had been cleaned up and Urista seemed "fine" and declined his offers of assistance.

Geovanna Urista, Rafael Urista's wife, testified that they went to BBB in the afternoon to shop for items for their new home. She said that she watched as two stacks of four or five hard plastic trash cans tumbled from the topmost shelf and landed on or near her husband, who was knocked unconscious for about two minutes. Upon awakening, Rafael complained of a headache and dizziness. Geovanna said that Urista wanted to leave the store, but they continued to walk around the store because she was concerned that he might "have a seizure or pass out on me." She also testified that Urista sustained scratches on his leg when broken dishes and glassware ripped his pants. Contrary to Traxler's testimony, Geovanna said that no BBB employee offered medical help or showed them to a place to sit down.

Rafael also testified at trial. He said that while looking at dishes at BBB with

his young daughter, he was struck in the head, knocked unconscious "for some time." He testified that when he awoke laying on the floor, he was dizzy, disoriented, his head hurt, and he felt sore to the touch. He saw broken dishes around him when he got up, as well as trash cans, including one that had shattered into many pieces. He also recalled that his jeans were torn and that there was a slight amount of blood around the torn fabric. He said that he wanted to leave the store immediately, but upon his wife's urging, he agreed to stay for a short time to be certain he was "okay." He said he did not see Traxler until he had left the immediate area, while walking around the store.

On the other hand, and as the supreme court observed,

> BBB chose to defend this case principally by attacking Urista's credibility. Urista and his wife were the only witnesses to his being struck in the head by the trash cans. And while this claim was not directly challenged by BBB, as it would have been difficult to do so in the absence of other witnesses, BBB did vigorously challenge Urista's claim to have been injured as a result of the incident. As we have already noted, the evidence at trial showed that after the incident occurred, Urista declined the manager's offer of assistance and did not report being knocked unconscious or that he had been injured. Moreover, he continued with his shopping before leaving the store. Urista also admitted that he had a pre-existing back injury, that he did not complain of pain immediately after the accident, that medical tests taken after the incident did not reveal any changes in Urista's back, and that Urista's medical records describing his injuries as work-related were changed by Urista's doctor, at the request of Urista's lawyer, to say the injuries were caused by the BBB accident. After

hearing this evidence, the jury could quite reasonably have disbelieved Urista's testimony that he had actually been struck by the trash cans that fell off the shelf. In short, the jury could simply have concluded that Urista failed to prove that BBB was negligent.

*Urista II,* 211 S.W.3d at 757–58. Upon this record, "It is reasonable to conclude that Urista failed to carry his burden of proof." *Id.* at 757. Accordingly, we hold that the jury's verdict was not so against the great weight and preponderance of the evidence that it was clearly wrong and unjust. *Dow Chem. Co.,* 46 S.W.3d at 242.

We overrule Urista's fifth issue.

### Conclusion

Having overruled all of Urista's remaining issues, we affirm the judgment of the trial court.