Opinion issued June 3, 2010.


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00657-CV

———————————

Karen Moore, Appellant

V.

State Farm
Mutual Automobile Insurance Company, Appellee



 



 

On Appeal from the 405th District Court

Galveston County, Texas



Trial Court Case No. 07CV1360

 



 

MEMORANDUM OPINION

          This
is a personal injury suit arising out of an automobile accident in which
appellant, Karen Moore, sued appellee, State Farm Mutual Automobile Insurance
Company (“State Farm”), under the underinsured motorist provision of Moore’s
automobile policy with State Farm.  The
jury returned a verdict that found the underinsured motorist negligent, and
awarded Moore $6,100 for past medical care, but awarded her no damages for
future medical care and no damages for past or future pain, suffering, or
impairment.  In her sole issue, Moore
challenges the factual sufficiency of the evidence to support the jury’s
finding of no damages for her past and future pain and mental anguish.

          We
affirm.

Background

          In 2004,
Moore was driving to work when an underinsured motorist negligently struck her
car.  Moore first described the other
driver’s collision with her car as a “heavy impact,” but later as “a bump,”
describing the damage to the vehicle as “slight.”  The accident left a “scuff mark” and a “dent”
in the rear bumper of Moore’s vehicle.  Moore
testified that she hit her head on the steering wheel, but when shown at trial
a report she filled out 19 days after the accident, she admitted that she noted
on the report that no part of her body hit the vehicle.  After the accident, she did not request an
ambulance, she did not seek immediate medical care, and she stated to the
accident investigator that she was not injured. 

          After
she left the scene of the accident, Moore went first to work and then to the hospital.  She testified that she went to the hospital
because she felt a stabbing pain in her back and neck and was concerned that the
accident might have shifted titanium plates in her neck.  She had titanium plates because she had a
double-level cervical fusion surgery at the C5-6 and C6-7 vertebrae in 1999,
with the purpose of the surgery to correct a condition that was either degenerative
or the result of a 1993 automobile accident, or both.  Although she had surgery that corrected only the
C5-6 and C6-7 vertebrae, she had problems with the C4-5 vertebrae too.  A medical record from December 11, 1998,
shows she received a C4-5 Cervical Discogram that revealed a “posterior tear
with free extravasation with moderate to severe concordant left shoulder
pain.”  The 1998 report also noted a “2
mm protrusion at C4-5.”  She testified
that after the 1999 surgery she was asymptomatic and that the surgery largely
cured her back and neck pain.  The record
shows that she filled a prescription for the pain medication Propoxyphene
approximately one year before the accident, but the record is not clear whether
the medication was for back pain related to the 1999 surgery.  

          The
hospital examined Moore and recommended that she contact the surgeon that
performed her 1999 cervical fusion surgery. 
Moore was not able to see the surgeon, Dr. Gertzbein, M.D., for one
month, and took Tylenol or Advil for what she described as a “stabbing pain in
[her] neck and head.” 

          Before
she saw Dr. Gertzbein, Moore visited a chiropractic clinic and treatment center
called Balanced Bodies Wellness Center. 
A medical report from the Center in 2004 noted that “[d]isc spacing is
relatively well maintained in the unfused segments,” and that there is “no evidence
of swelling or edema.”  Moore testified
that the Center would not treat her because she had titanium in her neck;
however, the medical records show that she did not return to the facility
because the facility refused to file a third party insurance claim.    

          Also
in 2004, she saw Dr. Gertzbein, who ordered MRIs.  The MRIs demonstrated a “small herniated disc
at the C4-5 level, which is the level above the previous surgical site.”  Dr. Gertzbein “discussed the findings with
her . . . [and] indicated that she would likely improve with time
and isometric exercises . . . .”  He also recommended physical therapy.  Moore attended physical therapy three
times.  Although at least seven visits
were scheduled, she “no showed” for four of the visits, and by August 2004, she
discontinued treatment.  She returned to
Dr. Gertzbein and he suggested she try “stretching at home” and asked that she
return in one month.  She failed to
return as requested and never saw Dr. Gertzbein again.  

After the passage of one year and
eight months, Moore saw Dr. Charles Reitman, M.D., in 2006.  Dr. Reitman was in the same medical office as
Dr. Gertzbein.  Moore testified that the lapse
in time between doctor visits was because of her inability to pay for them.  However, Moore also testified that her health
insurance continued to pay for all medical visits.  Moore went to Dr. Reitman’s office “looking
to settle [the] insurance claim related to the motor vehicle accident.”  

Dr. Reitman examined Moore and
concluded that she had a “normal posture,” that she had “no apparent
discomfort,” that she had a “somewhat limited . . . range
of motion” in her neck, and that her neurologic examination was “essentially
normal.”  He noted that an MRI from 2004
revealed a “large disc herniation at C4-5 leading to mild stenosis.”  He ordered a new MRI that also revealed a
disc bulge at C4-5.  He reported that her
disc bulge is “degenerative in nature,” but that based upon the timing of her
complaints, “[t]he accident likely aggravated her condition causing her ongoing
complaints.”  Dr. Reitman recommended
massage.  

Moore had the “opinion that Dr.
Reitman [did not want] to treat [her]” so she found another doctor, Dr. Richard
Westmark, M.D., and saw him for the first time in March 2007.  He conducted tests on her and determined that
she was “neurologically normal” and that the internal physical exam was
“unremarkable.”  He did find a 2
millimeter disc bulge at the C4-5 vertebrae. 
He recommended that she get steroid injections into her cervical
spine.  She chose not to do this type of
treatment.  She testified that part of
the reason she did not have steroid injections was that she did not “have the
money to pay for the injections,” and was “afraid of” injections; but was not
afraid of undergoing surgery under general anesthesia.  

          Moore
eventually sued State Farm, and in connection with her uninsured motorists
benefit claim alleged breach of contract, bad faith, and violations of the
Texas Deceptive Trade Practice Act and Insurance Code.  The parties agreed to a separation order that
abated the extra-contractual claims, stipulating that State Farm was entitled
to a $25,007 credit against any damages awarded to Moore. Moore sought
$110,000.  The case was tried before a
jury, which denied any damages for future medical care and for past or future
pain, suffering, or impairment.  Moore
moved for mistrial, the court denied Moore’s mistrial motion, and entered final
judgment on the jury verdict, ordering that Moore take nothing from State Farm
because the parties stipulated that State Farm was entitled to a $25,007 credit
against any damages awarded to Moore in the lawsuit.  

Factual Sufficiency

In her sole issue, Moore challenges
the factual sufficiency of the evidence supporting the jury’s finding that she
was not entitled to damages for future medical care nor for past or future pain
and suffering.  Specifically, Moore contends
the jury’s verdict is “so against the great weight and preponderance of the
evidence as to be manifestly unjust.”

          A.      Standard
of Review

When a party attacks the factual
sufficiency of an adverse finding on an issue on which she has the burden of
proof, she must demonstrate on appeal that the adverse finding is against the
great weight and preponderance of the evidence. 
Urista v. Bed, Bath, & Beyond,
Inc., 245 S.W.3d 591, 601 (Tex. App.—Houston [1st Dist.] 2007, no
pet.).  “In reviewing a point of error
asserting that a finding is ‘against the great weight and preponderance’ of the
evidence, we must consider and weigh all of the evidence which tends to
disprove its existence.”  Marshall v. Superior Heat Treating Co.,
826 S.W.2d 197, 199 (Tex. App.—Fort Worth 1992, no writ) (citing Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986)).  We must set aside a verdict only
if the evidence is so weak or if the finding is so against the great weight and
preponderance of the evidence that it is clearly wrong and unjust.  Urista,
245 S.W.3d at 601.  In considering the
evidence, we must detail the evidence relevant to the issue and state in what
regard the contrary evidence greatly outweighs the evidence in support of the
verdict.  Id. 

B.      Personal Injury
Damages

The mere fact of an injury does not
prove compensable pain and suffering or impairment.  Biggs
v. GSC Enter., Inc., 8 S.W.3d 765, 769 (Tex. App.—Fort Worth 1999, no pet.).  Rather, the process of awarding damages in a
personal injury case for amorphous, discretionary injuries such as pain and
suffering is inherently difficult because the alleged injury is a subjective,
unliquidated, non-pecuniary loss.  Dollison v. Hayes, 79 S.W.3d 246, 249
(Tex. App.—Texarkana 2002, no pet.). 
Each case must be measured on its own facts and we must give
considerable discretion and latitude to the jury.  J.
Wigglesworth Co. v. Peeples, 985 S.W.2d 659, 665 (Tex. App.—Fort Worth
1999, pet. denied).  Matters of past and
future physical pain, mental anguish, and physical impairment are particularly
within the jury’s province.  Marvelli v. Alston, 100 S.W.3d 460, 482
(Tex. App.—Fort Worth 2003, pet. denied). 


In some cases, injuries are so
substantial and the symptoms are so objective that an award for damages for
pain and suffering is clearly supported. 
Dollison, 79 S.W.3d at
249–50.  Objectively verifiable injuries
include, for example, bone fractures, nerve damage, burns, lacerations, torn
muscles, and concussions.  Id. at 250 n.1.  In these cases, the jury’s failure to award
such damages while simultaneously awarding medical expenses would be
erroneous.  Id. at 250.  In other cases,
the objective indicia of injury are either less obvious or entirely
absent.  Id.  While the jury may not
disregard objective symptoms of an injury, the jury may deny, and is free to
disregard, complaints that are purely subjective in nature because they are
necessarily speculative and incapable of direct proof.  Srite
v. Owens-Illinois, Inc., 870 S.W.2d 556, 559 (Tex. App.—Houston [1st Dist.]
1993), rev’d on other grounds, Owens-Illinois, Inc. v. Burt, 897 S.W.2d
765, 769 (Tex. 1995); see Blizzard v.
Nationwide Mut. Fire Ins. Co., 756 S.W.2d 801, 805 (Tex. App.—Dallas 1988,
no writ) (jury finding of no damages for pain and suffering not improper when
indicia of injury and damages more subjective than objective).  

 

 

C.      Analysis

          Moore
contends the verdict is against the great weight and preponderance of the
evidence because the jury found that she sustained a compensable injury and
that there was evidence Moore sustained a cervical disc herniation that
required a surgery.  We conclude the
verdict was not against the great weight and preponderance of the evidence.

          Although
Moore presented subjective evidence of neck pain, head pain, aching in her
arms, tingling in her fingers, and headaches, there was other evidence in the
record that the jury could reasonably have considered to negate Moore’s
subjective evidence.  For instance, there
were no reports of injury at the scene of the accident and an analysis of an
x-ray of her spine from that day “demonstrate[ed] an unremarkable appearance.”  Medical evidence from three weeks after the
accident noted that her “[d]isc spacing is relatively well maintained in the
unfused segments,” and that there is “no evidence of swelling or edema.”
Although physical therapy was recommended for her by her doctor based upon her
complaints of pain, she attended only three physical therapy sessions, “no
showed” on the other scheduled sessions, and canceled therapy in August 2004,
only two months after the accident.  After
initially seeing her former surgeon, she stopped seeking any medical attention
for one year and eight months, and did not see a doctor again until July 2006,
over two years after the accident.  

Medical records introduced at trial
show that she filled prescriptions for 30 types of medicine, including
hormones, diet pills, and antibiotics, and show that she filled a prescription
for the pain medication Propoxyphene approximately one year before the
accident.  These same records, however,
also show that she did not fill a single pain medication prescription after the
2004 accident.

Moore testified, as did two of her
treating doctors, Dr. Westmark and Dr. Reitman. 
Dr. Reitman testified that the medical records showed that there was no
pressure on the nerves and that there was no way of telling whether the small
disc bulge at C4-5 was causing pain for Moore. 
He further testified that based on the medical evidence, it was possible
the disc bulge at the C4-5 level pre-existed the accident.  Dr. Reitman testified that a 1998 report and
a 2007 report, which both reported a 2 millimeter disc bulge at the C4-5
vertebrae, were similar in meaning and that they indicated there was
degeneration at C4-5 “prior to the accident.” 
Reitman testified that he would not recommend surgery for the bulge
because it was a small degenerative bulge that did not cause any neurological
problems.  

Dr. Westmark testified that the
C4-5 disc bulge could have existed before the 2004 accident or that a
degenerative process could have caused the abnormality.  He noted that Moore had a bulge at the C4-5
vertebrae before the 1999 surgery and noted that there was no objectively
verifiable evidence that the bulge at C4-5 began causing pain only after the
2004 accident, or that it was causing pain at all outside of Moore’s subjective
complaints.  

Taking into consideration the
entire record, we hold that the finding of zero damages for pain and suffering
and future medical costs is not so against the great weight and preponderance
of the evidence as to be manifestly unjust. 
See Biggs, 8 S.W.3d at 769
(Tex. App.—Fort Worth 1999, no pet.) (holding that based on inconclusive
evidence about cause of appellant’s herniated disc, and evidence regarding back
pain and impairment based only upon conflicting self-reports, it was within
province of jury to resolve that conflict, conclude that appellant’s back pain
and impairment were caused by earlier injury or long term back problems, and
conclude that any pain or impairment resulting from accident was too minimal to
warrant monetary award).

Conclusion

          We affirm the judgment of the trial
court.

 

 

 

                                                                             Elsa
Alcala

                                                                             Justice

 

Panel
consists of Justices Jennings, Alcala, and Massengale.