

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-09-00031-CV
_____

GEORGE D. SOLOMON AND
WIFE, JINI SOLOMON, Appellants

V.

PERRY STEITLER, D/B/A NORTH EAST TEXAS LAND &
TIMBER, LARRY BULLARD, AND TINA BULLARD, Appellees

On Appeal from the 76th Judicial District Court
Titus County, Texas
Trial Court Nos. 32,411 & 32,867

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

OPINION

In the beginning, the uses intended for the adjoining tracts of rural land in Titus County owned by neighbors Larry and Tina Bullard and George D. and Jini Solomon[1] did not seem to be at odds. The Bullards established a rural residence there and planted pine trees on part of their property to provide future retirement income and to enhance their pastoral lifestyle. The Solomons, on the adjoining property, built a lake using Perry Steitler, d/b/a North East Texas Land & Timber, as their contractor. The conflict developed when the Solomons' lake flooded part of the Bullards' property, killing some of the Bullards' trees.[2]

---

[1]George D. Solomon alone is named as defendant by the Bullards; George and Jini Solomon are named as defendants by Steitler. For ease of reading, further reference to George and Jini Solomon or to George Solomon will simply be "Solomon" or "the Solomons."

[2]This rather complex civil matter originated as a simple breach of contract claim by Steitler, d/b/a North East Texas Land & Timber against the Solomons for failure to pay the balance due on a contract for work performed in the construction of roads, dams, levees, ponds, and lakes on approximately 400 acres of land owned by the Solomons. The Solomons filed a counterclaim for damages incurred as a result of improper removal of trees and stumps. The counterclaim further alleged that the oral contract between the parties called for Steitler to construct one lake, in particular, of approximately fifty-five surface acres. Once constructed, the lake covered approximately 100 surface acres.

The Bullards own approximately 104 acres adjacent to and surrounded on three sides by the Solomons' property. When the 100-acre lake was constructed, water backed up and flooded the Bullards' adjoining property. The flooding of the Bullards' property began in March 2006. The portion of the Bullards' property flooded by the Solomons' lake varied between 14.65 acres and 18.2 acres, depending on rainfall. At the time of trial, 4.3 acres of the Bullards' property remained under water. The flooded property was planted with pine and ornamental trees, through which the Bullards had created a canopied lane on which to ride four-wheelers. The pine trees were planted as a retirement plan, and were anticipated to be mature and ready for harvest when Mr. Bullard reached retirement age. These trees were destroyed by the flooding.

2

The Bullards filed a lawsuit against the Solomons and Steitler, seeking damages wrought by the flooding of their land. This lawsuit was consolidated with Steitler's breach of contract lawsuit against the Solomons. On conclusion of a three-day trial, the jury determined that Solomon diverted or impounded the natural flow of surface waters in such a manner as to damage the property of the Bullards in violation of the Texas Water Code and that such damage would continue in the future.

The jury further determined that Solomon[3] was negligent and grossly negligent in proximately causing damage to the Bullards' property and awarded, in addition to actual damages, exemplary damages in the amount of $50,000.00. Finally, the jury awarded damages to Steitler based on Solomon's breach of contract, finding no breach by Steitler. In addition, the Bullards and Steitler were awarded attorney's fees, $7,500.00 of which was awarded to each party specifically for representation in the court of appeals.

In addition to the award of monetary damages and attorney's fees, the final judgment imposes a permanent injunction binding on Solomon, commanding Solomon to reduce "the Levee (Dam) level on Williamson Creek on his property to a point where the surface water level on his property will remain below the surface level on the West, South and Southeast portion of Larry and Tina Bullard's land described below . . . ."

---

[3]The jury was asked to determine whether the negligence of Steitler and/or Solomon proximately caused the damages to the Bullards' property, but did not find Steitler to have been negligent.

3

Solomon appeals. We affirm the judgment of the trial court, because we determine that (1) punitive damages can be assessed against the Solomons predicated on their gross negligence in violating Section 11.086 of the Texas Water Code, (2) the Bullards' pleadings support damages of $15,300.00 for loss of use of real property, (3) Steitler's directed verdict against the Solomons was not error, (4) granting the challenge for cause did not abuse the trial court's discretion, (5) the award of appellate attorney's fees was impliedly conditioned on a successful appeal, (6) Solomon waived his complaint concerning the issuance of the injunction, and (7) reconsidering attorney's fees is not necessary.

*(1)    Punitive Damages Can Be Assessed Against the Solomons Predicated on Their Gross Negligence in Violating Section 11.086 of the Texas Water Code*

Solomon relies on Section 41.004 of the Texas Civil Practice and Remedies Code[4] in support of his position that punitive damages are not recoverable.[5] This section of the Code requires the

---

[4]Section 41.004 of the Texas Civil Practice and Remedies Code provides, in relevant part:

Factors Precluding Recovery

(a)    Except as provided by subsection (b), exemplary damages may be awarded only if damages other than nominal damages are awarded.

(b)    Exemplary damages may not be awarded to a claimant who elects to have his recovery multiplied under another statute.

TEX. CIV. PRAC. & REM. CODE ANN. § 41.004 (Vernon 2008).

[5]The question of whether such damages are recoverable under this section of the Code is a question of statutory interpretation. Questions of statutory interpretation are questions of law reviewed de novo. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006).

4

recovery of actual damages as a predicate to the recovery of punitive damages. *See Travelers Indem. Co. v. Fuller*, 892 S.W.2d 848, 852 (Tex. 1995). Solomon further contends that the recovery of punitive damages requires a finding of an independent tort with accompanying actual damages. *Fed. Express Corp. v. Dutschmann*, 846 S.W.2d 282, 284 (Tex. 1993). Because the damage findings were solely related to his violation of the Texas Water Code,[6] Solomon disputes the viability of the punitive damage award. Said another way, Solomon claims that the law requires punitive damages to be based on an independent underlying tort and that, therefore, the failure to secure a finding that damages awarded were proximately caused by Solomon's independent negligence is fatal to the recovery of punitive damages. The jury initially found that "George Solomon diverted or impounded the natural flow of surface waters which proximately caused damage to the property of Larry and Tina Bullard," followed by a monetary award for each element of damage submitted to it. Immediately following the damage findings, the jury was asked to determine "whether the negligence, if any, of . . . George Solomon proximately caused the damages, if any, to the property owned by Larry Bullard and wife, Tina Bullard." The jury answered "yes" to this question.[7]

---

[6]Total compensatory damages were $82,225.00. Solomon concedes that a finding of negligence with accompanying damages would have satisfied the independent tort requirement.

[7]The issue of negligence was not fully submitted, as there was no request of the jury to determine what damages, if any, were proximately caused by said negligence. One could infer, based on the inclusion of the term "the damages," that this question refers to the damages found by the jury in response to the preceding question.

The jury was then asked to determine whether the harm to the Bullards resulted from the gross negligence of Solomon.[8] This question was predicated on an affirmative and unanimous response to question number one, which asked the jury to determine whether there was a violation of the Texas Water Code.[9] Solomon contends the damage findings (for violation of the Texas Water Code) were not tied to Solomon's negligence or gross negligence, and therefore, because there is no independent tort on which exemplary damages are based, the exemplary damage award cannot stand. *Dutschmann*, 846 S.W.2d at 284 (recovery of punitive damages requires finding of independent tort with accompanying actual damages).[10]

---

[8]The jury was instructed that "Gross negligence" means an act or omission by George Solomon,

> (a) which when viewed objectively from the standpoint of George Solomon at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to Larry and Tina Bullard; and

> (b) of which George Solomon has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of Larry and Tina Bullard.

No objections were made to the charge of the court at trial or on appeal.

[9]It would appear that, while the gross negligence inquiry was perhaps improperly predicated on an affirmative response to the inquiry regarding violation of the Texas Water Code, rather than an affirmative finding of negligence, this predicate serves to tie the gross negligence finding to violation of the Texas Water Code. In other words, the affirmative response to the gross negligence inquiry indicates the jury found Solomon to have been grossly negligent in violation of the Texas Water Code.

[10]We are mindful of the fact that *Dutschmann* has been relied on in support of the proposition that a statutory violation cannot support a punitive damage award. In *Dutschmann*, the actual

Putting aside the issue of whether the negligence question—though not fully developed independent of the statutory violation—could nevertheless support the damage findings, we believe the more pertinent issue here is whether the punitive damage award can be upheld on the basis of the jury's finding that Solomon was grossly negligent in violating Section 11.086 of the Texas Water Code. *See* TEX. WATER CODE ANN. § 11.086. That section of the Code provides that

> (a) No person may divert or impound the natural flow of surface waters in this state, or permit a diversion or impounding by him to continue, in a manner that damages the property of another by the overflow of the water diverted or impounded.

> (b) A person whose property is injured by an overflow of water caused by an unlawful diversion or impounding has remedies at law and in equity and may recover damages occasioned by the overflow . . . .

damage award and attorney's fee award were based on both breach of contract and retaliatory discharge (a statutory violation). The court upheld each of these awards based on the statutory violation alone, because no contract existed as a matter of law. The retaliatory discharge claim was based on TEX. REV. CIV. STAT. ANN. art. 5221k, § 5.05, *repealed by* Act of May 12, 1993, 73rd Leg., R.S., ch. 269, § 5, 1993 Tex. Gen. Laws 987, 1273. Section 7.01 of former Article 5221k set forth the type of relief available through civil actions. Under this statute, courts were permitted only to order equitable relief. Article 5221k did not allow for recovery for other or additional damages, including punitive damages. Therefore, the punitive damage award could not stand. Section 7.01 has been recodified in TEX. LABOR CODE ANN. § 21.2585 (Vernon 2006). *See* Act of May 14, 1993, 73rd Leg., R.S., ch. 276, § 7.01(e), 1993 Tex. Gen. Laws 1285, 1291 (effective September 1, 1993), *amended by* Act of April 25, 1995, 74th Leg., R.S., ch. 76, § 9.07(b), 1995 Tex. Gen. Laws 458, 625–26, *amended by* Act of May 26, 1999, 76th Leg., R.S., ch. 872, § 13, 1999 Tex. Gen. Laws 3556, 3562. This section of the Code provides much the same type of equitable relief as provided by former Article 5221k. However, Section 21.2585 permits the court, in addition to equitable relief, to award compensatory and punitive damages. In *Dutschmann*, there was no statutory or common-law basis for the recovery of punitive damages. The court's determination that there was no basis on which the punitive damage award could be upheld cannot therefore be interpreted as broadly as Solomon would propose. That is, *Dutschmann* is not properly interpreted to stand for the broad proposition that a statutory violation can never support a punitive damage award.

*Id*.

Subsection (b) of this section provides that a person "injured by an overflow" has "remedies at law" and may "recover damages occasioned by the overflow." The issue, therefore, is whether the statutory language providing for "remedies at law" and the recovery of "damages" includes only actual damages or whether the statute also permits recovery of punitive damages.

The Bullards contend that the holding in *Whole Foods Market Southwest, L.P. v. Tijerina*, 979 S.W.2d 768 (Tex. App.—Houston [14th Dist.] 1998, pet. denied), should control the decision in this case. In *Tijerina*, the court rejected an argument similar to the issue raised by Solomon. *Tijerina* involved an employment discrimination claim brought under the Texas Workers' Compensation Act's anti-retaliation provision.[11] The court held that, because the statute permitted recovery of exemplary damages when the employer acted with malice, the employer's contention that the employee "was required to plead and prove a separate tort in order to support her punitive damage award [was] meritless." *Id.* at 781.

To apply the reasoning used by the court in *Tijerina*, we first must determine whether the statute permits the recovery of exemplary damages. The issue of whether the terms "remedies at

---

[11]In the context of the anti-retaliation statute, which permits an employee to recover "reasonable damages" incurred as a result of the violation of Section 451.001 of the Texas Labor Code, the Texas Supreme Court has interpreted the term "reasonable damages" to include punitive damages. *Azar Nut Co. v. Caille*, 734 S.W.2d 667 (Tex. 1987) (interpreting TEX. LABOR CODE ANN. § 451.002 (Vernon 2006)). The court determined that "reasonable damages," for purposes of this provision of the statute, are not limited to actual damages, but may include future damages, as well as exemplary or punitive damages. *Caille*, 734 S.W.2d at 669; *see also In re Poly-America, L.P.*, 262 S.W.3d 337, 351 (Tex. 2008) ("reasonable damages" not limited to actual damages).

law" and "damages," as used in Section 11.086, include punitive damages has not been directly addressed. There are, however, several cases in which punitive damages have been held to be recoverable as a result of a violation of this section.

In *Planet Plows, Inc. v. Evans*, 600 S.W.2d 874, 877 (Tex. App.—Amarillo 1980, no writ), Evans brought an action for damages to her home, alleging that Planet Plows violated Section 11.086 of the Texas Water Code by diverting the natural flow of surface waters onto, and impounding the waters on, her property. Actual and punitive damages were awarded.[12] On appeal, Planet Plows argued that punitive damages were not recoverable on a mere violation of a statute. To the contrary, the court held that, if there is evidence of an intentional violation of Section 11.086, the defendant may be required to respond in exemplary damages.[13] *Id.* at 877.

---

[12]On appeal, the court determined the finding of actual damages was not supported by the evidence (finding in excess of the damage amounts proved) and remanded the case to determine actual damages.

[13]In support of this proposition, *Planet Plows* relies on *Tennessee Gas Transmission Co. v. Moorhead*, 405 S.W.2d 81 (Tex. App.—Beaumont 1966, writ ref'd n.r.e.). *Moorhead* involved a Water Code violation in which the defendant permanently diverted the flow of the West San Jacinto River by constructing an artificial channel and dam, without consent of the plaintiffs, causing plaintiffs to lose river frontage and leaving them with no land abutting the river. The jury awarded actual and exemplary damages. On appeal, defendants alleged that the pleadings were insufficient to support a claim for exemplary damages. The court found to the contrary, and asked the jury the following question:

> Do you find from a preponderance of the evidence that the Defendant through its agents, servants, and employees acted willfully and with malice towards Plaintiffs by the construction of the dam and channel?

The pleadings supported the submission of the foregoing question, which the jury answered in the

Punitive damages were awarded for violation of Section 11.086 in *Bily v. Omni Equities, Inc.*, 731 S.W.2d 606 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). In that case, Bily sued for injunctive relief and damages, alleging that Omni impounded the natural flow of surface waters from his property. The trial court entered judgment for recovery of actual damages, but disallowed recovery of punitive damages. On appeal, the court noted that Bily's action against Omni was based on Section 11.086 and was not dependent on any finding that Omni was negligent. *Id.* at 611. The jury specifically found each element of the statutory cause of action for violation of Section 11.086. Moreover, the jury determined that Omni's conduct in impounding the flow of surface waters was intentional and unreasonable[14] and that Omni acted with "heedless and reckless" disregard in failing to make any provision for drainage of Bily's property. "Heedless and reckless" disregard was defined:

> [M]ore than momentary thoughtlessness, inadvertence, or error of judgment. It means such an entire want of care as to indicate that the act or omission in question was the result of conscious indifference to the rights, welfare, or safety of the persons affected by it.

*Id.* at 613.

---

affirmative. *Id*. at 86.

[14]The jury was instructed that "unreasonable" means obstructing the flow of surface water arbitrarily, negligently, wantonly, or without due regard for the adjoining property. *Bily*, 731 S.W.2d at 613.

While *Bily* raised questions of sufficiency of the evidence to support the affirmative response to these inquiries, it recognizes the propriety of a punitive damage award for violation of Section 11.086 with conscious indifference to a plaintiff's rights.

Finally, the 1998 case of *Boatman v. Lites*, 970 S.W.2d 41 (Tex. App.—Tyler 1998, no writ), supports the proposition that exemplary damages may be awarded on a showing of gross negligence in violation of Section 11.086. In that case, the Lites maintained that the Boatmans negligently diverted the natural flow of water from their land onto the Lites' land by the use of "berms." The Lites alleged this to be negligence and a violation of Section 11.086. *Id*. at 43. The jury returned a judgment for actual and punitive damages. On appeal, the Boatmans claimed there was insufficient evidence to support a submission of gross negligence and an award of exemplary damages. "Gross negligence" was defined:

> [M]ore than momentary thoughtlessness, inadvertence or error of judgment. It means such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected.

*Id*. at 45. The punitive damage award was upheld on appeal.

Here, the jury likewise determined that Solomon acted with conscious indifference to the rights, safety, or welfare of the Bullards in his violation of Section 11.086. Question number five in the charge of the court asks the jury if there is "clear and convincing evidence that the harm to Larry and Tina Bullard resulted from gross negligence of George Solomon, if any?" Clear and

11

convincing evidence was defined as "the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established." "Gross negligence" was defined:

> [A]n act or omission by George Solomon (a) which when viewed objectively from the standpoint of George Solomon at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to Larry and Tina Bullard; and (b) of which George Solomon has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of Larry and Tina Bullard.

Solomon does not assign error to the way the issues were worded or defined. Instead, he claims exemplary damages cannot be awarded without the finding of an independent tort on which actual damages are awarded. Because an intentional or grossly negligent violation of Section 11.086 of the Texas Water Code will support the imposition of exemplary damages, we overrule this point of error.[15]

---

[15]As our sister court explained in *Tijerina*:

> A careful reading of *Dutschmann* reveals the opinion actually stands for the long-standing rule of law in Texas that a cause of action for breach of contract alone will not support an award of punitive damages, but that there must also be a finding of an independent tort. Indeed, numerous opinions from the Texas Supreme Court and the courts of appeals have cited *Dutschmann* for this statement of the law. However, when alleging a violation of the Texas Anti-Retaliation law, the Texas Supreme Court has held that where actual malice is shown, punitive damages may be assessed against an employer for violating Section 451.001. Section 451.002 permits an employee to recover "reasonable damages" incurred as a result of the violation of section 451.001, and that term has been interpreted to include punitive damages. Thus, inasmuch as the statute prohibiting retaliatory discharge contemplates punitive damages, WFM's contention that Tijerina was required to plead and prove a separate tort in order to support her punitive damage award is meritless.

*(2)        The Bullards' Pleadings Support Damages of $15,300.00 for Loss of Use of Real Property*

Solomon contends the trial court erred in entering judgment which included damages of $15,300.00 for "loss of use of real property" because it exceeds the damages amount pled. Generally, a judgment for damages in excess of the amount sought by the pleadings is error, even if a larger award might be warranted by the evidence. *See* TEX. R. CIV. P. 301; *Employers Ins. of Wausau v. Schaefer*, 662 S.W.2d 414, 419 (Tex. App.—Corpus Christi 1983, no writ). Thus, a trial court cannot render judgment for an amount in excess of what a plaintiff requested in the live pleadings. *Picon Transp., Inc. v. Pomerantz*, 814 S.W.2d 489, 491 (Tex. App.—Dallas 1991, writ denied).

Here, the jury awarded $15,300.00 for "loss of use of real property," even though the Bullards use in their pleadings the number $12,000.00 in connection with this element of damage. The Bullards contend that this award is nevertheless valid, because they did not plead the amount of $12,000.00 as a maximum on these damages. The Bullards' pleading is not, by its terms, limited to $12,000.00:

> As a direct and/or proximate result of Defendant Solomon's negligent, wrongful, or illegal acts and/or conduct, Plaintiffs Bullard have been deprived of the use of a portion of their land, to their damage in a sum to be determined by the jury within the jurisdictional limits of this court *estimated to be but not limited to the following . . . .* Loss of use of land . . . $12,000.00.

(Emphasis added.)

---

979 S.W.2d at 780–81 (footnotes and citations omitted).

13

In support of their position that the award is valid, the Bullards rely on *City of Wichita Falls v. Dye*, 517 S.W.2d 680, 682 (Tex. App.—Fort Worth 1974, writ ref'd n.r.e.) (when counterclaim pleaded for damages "in the sum of at least $900.00," and plaintiff did not specially except, pleading supported award of $1,007.50 because "[t]he term 'at least' asserts the minimum and not the maximum amount sought").

When a requested damage amount is preceded by the words "at least," this is sufficient to support an award of a higher amount. *Tex. Corrugated Box Corp. v. Ambrosia Group, Inc.*, No. 01-87-00389-CV, 1988 WL 75774, at *3 (Tex. App.—Houston [1st Dist.] July 26, 1988, no writ) (not designated for publication). Here, the damage amounts were "estimated to be but not limited to" the amounts listed. This defining language, rather than restricting the amount of recovery, supports an award of a higher amount. Accordingly, the damages awarded by the jury[16] and entered in the judgment for "loss of use of real property" are appropriate under the live pleadings at the time of trial.

*(3)     Steitler's Directed Verdict Against Solomon Was Not Error*

At the close of evidence, Steitler was granted a directed verdict on Solomon's claim for breach of contract, alleging that Steitler left large stumps above four inches high and removed trees marked for retention. The directed verdict was based on insufficient evidence of damages. Solomon

---

[16]Solomon neither specially excepted to the pleadings nor filed a motion to remit damages on the basis that the pleadings do not support the amount of the jury award.

claims the trial court erred in granting the directed verdict, because he introduced evidence of the purchase price of a chain saw used to cut tree stumps.

Review of a directed verdict is conducted under a legal sufficiency analysis of the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). The evidence should be considered in the light most favorable to the party against whom the verdict was directed, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *AVCO Corp. v. Interstate Sw., Ltd.*, 251 S.W.3d 632, 667 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). A directed verdict is properly granted when "no evidence of probative force raises a fact issue on the material questions in the suit." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

Solomon points out that the appellate record contains some evidence of damages resulting from Steitler's breach of contract based on failure to cut the tree stumps to an agreed height. This evidence comes from Jini Solomon, who testified that she purchased a chain saw for $237.06, which was used for cutting down stumps. Mrs. Solomon also testified that the chain saw was used "all over the property and not only to cut stumps" and that she still has the chain saw.[17]

---

[17]We do not find this issue to have been waived. Neither a formal exception to a trial court ruling or order nor a signed, separate order is required to preserve a complaint for appeal. TEX. R. APP. P. 33.1(c). More precisely, a complaint that the trial court erred in granting a directed verdict may be reviewed on appeal, even if no exception is taken from the order granting the directed verdict. *See, e.g.*, *Robertson v. Morin*, No. 03-08-00527-CV, 2009 WL 2902720, at *7 (Tex. App.—Austin Aug. 27, 2009, no pet.) (mem. op.).

15

Evidence of damages resulting from the alleged breach is scant, at best. There is evidence that a chain saw was purchased to cut stumps and to use on the entire property. There is neither evidence creating a nexus between the act of breach (leaving stumps over four inches high) and the need to purchase the chain saw, nor evidence that the chain saw was used to cut stumps previously left too tall by Steitler. The chain saw was purchased merely to "cut stumps." Without more, this evidence is not of sufficient probative force to raise a material fact issue on damage. *See id.*

Because Solomon failed to present evidence to raise a fact issue essential to his right of recovery, the trial court did not err in directing a verdict against him. *See Latham v. Castillo*, 972 S.W.2d 66, 67–68, 70–71 (Tex. 1998). This point of error is overruled.

*(4)* *Granting the Challenge for Cause Did Not Abuse the Trial Court's Discretion*

A person is disqualified to serve as a juror on a particular case if he or she has a bias or prejudice in favor of or against a party in the case. TEX. GOV'T CODE ANN. § 62.105(4) (Vernon 2005). Thus, a veniremember may be statutorily disqualified because of a general inability to follow a trial court's instructions regarding the law. *See Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 751 (Tex. 2006). If a prospective juror's bias or prejudice for or against a party in a lawsuit is established as a matter of law, the trial court must disqualify that person from service. *Malone v. Foster*, 977 S.W.2d 562, 564 (Tex. 1998).

A trial court's decision regarding challenges for cause is reviewed using an abuse-of-discretion standard. *Guerra v. Wal-Mart Stores*, 943 S.W.2d 56, 59 (Tex. App.—San Antonio 1997,

16

writ denied). Under an abuse-of-discretion standard, the court of appeals cannot overrule the trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991). Moreover, the court of appeals cannot substitute its judgment for the trial court's reasonable judgment even if it would have reached a contrary conclusion. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992). The trial court does not abuse its discretion if some evidence reasonably supports the trial court's decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

Solomon claims the trial court erroneously granted Steitler's challenge for cause of venireperson Evelyn Riepe because the court misinterpreted Riepe's answer to a question posed by counsel for Steitler. The relevant exchange is brief:

> [STEITLER'S COUNSEL]: You're the only person that can answer there, Ms. Riepe. Based upon your personal contact with the Russells, the fact that you have sold them a house, that you've maintained a friendship with them over a number of years, can you tell me that wouldn't affect your judgment in this case at all?
>
> MS. RIEPE: It might.
>
> THE COURT: Okay. I have to make the ultimate decision on these, and I need either a yes or a no. Possibly, maybe I could, maybe, okay, or whatever, I need a yes or no.
>
> MS. RIEPE: Yes.
>
> THE COURT: I'll take up any challenges at the end of the voir dire.

The trial court also addressed the issue of venireperson Riepe at the conclusion of voir dire:

> THE COURT: Does the Plaintiff Steitler have any challenges for cause?

17

[STEITLER'S COUNSEL]: We do, your Honor. We would challenge juror number seven, Evelyn Alice Riepe.

THE COURT: And it's granted.

. . . .

THE COURT: . . . Does the Plaintiff Bullard have any challenges for cause?

[COUNSEL FOR BULLARD]: I missed his.

[STEITLER'S COUNSEL]: Seven and 28.

[COUNSEL FOR BULLARD]: Number six, which she admitted - -

[DEFENSE COUNSEL]: Related.

[COUNSEL FOR BULLARD]: Yeah. She knew Mr. Russell, and she said that would affect her ability to sit on this case. She knew him, and she didn't feel like that she could hear the evidence fairly. Number six.

THE COURT: Number six?

[COUNSEL FOR BULLARD]: Yes, sir.

THE COURT: The one I recall, her response was that she had been to a birthday party and some of that stuff, but now Ms. Riepe was the one that actually said she couldn't, juror number seven.

[COUNSEL FOR BULLARD]: Okay. So you're saying I've got the wrong juror.

THE COURT: I've got number six is not - -

[COUNSEL FOR BULLARD]: Number six, I think. Number seven. I've got it circled, number seven, and it says that she could not be fair.

18

Solomon contends that, since Riepe answered a negative question in the affirmative, the trial court was presumably confused by the negative question. Solomon interprets this exchange as Riepe acknowledging that actually, "yes," her friendship with Russell would not affect her judgment.

Steitler contends that Solomon failed to preserve this issue for appellate review, and even if the issue was preserved, any error was harmless. In general, voir dire objections must be timely and plainly presented. *Vasquez*, 189 S.W.3d at 759; *see, e.g.*, *Hallett v. Houston Nw. Med. Ctr.*, 689 S.W.2d 888, 889–90 (Tex. 1985) (appellant waived trial court's error in failing to excuse juror for cause by not informing court before exercise of peremptory challenges that counsel lacked sufficient peremptory challenges to remove all objectionable jurors); *see also* TEX. R. APP. P. 33.1(a)(1) (timely objection to trial court required to preserve complaint for appeal).

We find only one civil case involving this precise issue. In *Urista v. Bed, Bath & Beyond, Inc.*, 245 S.W.3d 591 (Tex. App.—Houston [1st Dist.] 2007, no pet.), the trial court announced the juror numbers of those who were being excused for cause. At no point in the proceedings did Urista's attorney request that the trial court bring the contested juror forward for individual questioning, nor was there objection to the trial court's ruling granting the challenge for cause of this juror. The *Urista* court determined that, in light of the failure to object when the trial court granted the challenge for cause, Urista waived his complaint on appeal. *Id*. at 596 (citing TEX. R. APP. P. 33.1(a)(1)).

To preserve error, a timely, specific objection must be made. TEX. R. APP. P. 33.1(a). A "timely" objection is one interposed at a point in the proceedings which gives the trial court the opportunity to cure any alleged error. *Beall v. Ditmore*, 867 S.W.2d 791, 795 (Tex. App.—El Paso 1993, writ denied). In this case, there was an opportunity for Solomon's attorney to object, or to have venireperson Riepe called forward for individual questioning in order to clarify the apparent confusion. Having failed to do so, we find that Solomon waived this point of error on appeal.

While we believe the failure to properly preserve error on appeal is determinative on this point, there is another reason why the point cannot be sustained. Solomon does not allege or attempt to demonstrate how any harm resulted by reason of the adverse ruling. It has long been the established rule in this state that, even though the challenge for cause was improperly sustained, no reversible error is presented unless appellant can show he or she was denied a trial by a fair and impartial jury. *City of Hawkins v. E.B. Germany & Sons*, 425 S.W.2d 23, 26 (Tex. App.—Tyler 1968, writ ref'd n.r.e.); *see Gray v. State*, 233 S.W.3d 295, 298 (Tex. Crim. App. 2007). The record before us fails to show that Solomon's attorney objected to any juror on the panel. It must, therefore, be presumed that Solomon was afforded a fair and impartial jury, and no harm could have resulted by reason of the court's dismissal of venireperson Riepe. The trial court did not abuse its discretion in granting this challenge for cause.

*(5)*     *The Award of Appellate Attorneys' Fees Was Impliedly Conditioned on a Successful Appeal*

The jury assessed attorneys' fees for the Bullards and Steitler. These awards were incorporated into the final judgment of the trial court. In addition to fees awarded for pretrial and trial work, Solomon was ordered to pay $7,500.00 to Steitler and $7,500.00 to the Bullards "if appealed to court of appeals." Because these fees were conditioned only on an appeal being filed, and not expressly on Steitler and the Bullards' successful appeals, Solomon contends the attorney fee awards are void.

The trial court may not grant an award of appellate attorney's fees unless such award is conditioned on a successful appeal, as doing so could penalize a party for pursuing a meritorious appeal. *Tex. Farmers Ins. Co. v. Cameron*, 24 S.W.3d 386, 400 (Tex. App.—Dallas 2000, pet. denied). The Bullards and Steitler agree with this proposition, but claim the judgment of the trial court implicitly conditions the award of appellate attorney's fees on a successful appeal. *Spiller v. Spiller*, 901 S.W.2d 553, 560 (Tex. App.—San Antonio 1995, no writ); *see also Dorman v. Arnold*, 932 S.W.2d 225, 229 (Tex. App.—Texarkana 1996, no writ) (where attorney's fees are contingent on success, award should be read to implicitly require success).

This issue was addressed in *Spiller*, wherein appellate attorney's fees were awarded, but were not explicitly made contingent on success. The court, having recognized that unconditional awards of appellate attorney's fees may not be awarded, determined that it was implicit in the court's

21

judgment that the award of appellate attorney's fees is conditioned on a successful appeal. *Robinwood Bldg. & Dev. Co. v. Pettigrew*, 737 S.W.2d 110, 112 (Tex. App.—Tyler 1987, no writ).

As in *Spiller*, the judgment before this Court does not explicitly condition the award of appellate attorney's fees on the Bullards' and Steitler's success on appeal. We recognize, however, that the award implicitly requires success in order to recover the fees. Accordingly, this Court will reform the judgment to explicitly clarify that the award is conditional. *CPS Int'l, Inc. v. Harris & Westmoreland*, 784 S.W.2d 538, 544 (Tex. App.—Texarkana 1990, no writ). In *CPS*, this Court held that an unconditional award of appellate attorney's fees is improper. When the trial court errs by failing to condition the award of appellate attorney's fees, this error can be corrected by reforming the judgment without the necessity of sending the case back to the trial court. *Id.*

*(6)      Solomon Waived His Complaint Concerning the Issuance of the Injunction*

The final judgment incorporated the jury's damage findings as well as a permanent injunction issued by the trial court. Solomon challenges the trial court's issuance of a permanent injunction as a violation of the one satisfaction rule, in light of damage awards for the same harm the injunction is intended to remedy.[18] The Bullards claim this issue was not preserved for appellate review, and was thus waived. We agree.

---

[18]Under the one satisfaction rule, a plaintiff is entitled to only one recovery for any damages suffered. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000) (rule applies when multiple defendants commit the same act as well as when defendants commit technically different acts that result in single injury). This rule is further designed to prevent double recovery for actual damages. *Am. Baler Co. v. SRS Sys., Inc.*, 748 S.W.2d 243, 246 (Tex. App.—Houston [1st Dist.] 1988, writ denied).

To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion. TEX. R. APP. P. 33.1(a). "To preserve a point of error in a judgment, a party must inform the trial court of its objection by a motion to amend or correct the judgment, a motion for new trial, or some other similar method." *Homes v. Humphrey*, 244 S.W.3d 570, 582 (Tex. App.—Beaumont 2008, pet. denied); *Dal-Chrome Co. v. Brenntag Sw., Inc.*, 183 S.W.3d 133, 144 (Tex. App.—Dallas 2006, no pet.); *see also Holland v. Hayden*, 901 S.W.2d 763, 765 (Tex. App.—Houston [14th Dist.] 1995, writ denied) (motion for new trial is appropriate method for preserving error regarding alleged defect in final judgment).

The record before us provides only a brief glance at this issue, during the following exchange at the charge conference:

> [DEFENSE COUNSEL]: I had mentioned the injunction provision, Judge, and you considered that?
>
> THE COURT: There has been a submission by the Court concerning any future damages that the Court will consider as to an injunction against the defendants to have the water removed from their property.
>
> Mr. Russell?
>
> [COUNSEL FOR THE SOLOMONS]: I have nothing further other than related to the charge.
>
> THE COURT: Okay.

From this brief exchange, we see that no objection to the issuance of injunctive relief was made.[19]  There is no indication in the record that Solomon raised the issue of the propriety of injunctive relief or otherwise contested the grant of injunctive relief in the trial court.  Moreover, this issue was not raised via motion to amend or correct the judgment or in a motion for new trial.

Solomon contends that, because the issue specifically complained of, the grant of a permanent injunction, was tried to the trial court, Solomon was relieved of the error preservation requirements set forth in Rule 33.1(a) of the Texas Rules of Appellate Procedure.[20]  Instead, Solomon relies on Rule 33.1(d), which provides that, in a nonjury case, a complaint regarding the legal or factual insufficiency of the evidence—including a complaint that the damages found by the court are excessive or inadequate—may be made for the first time on appeal in the complaining party's brief.  TEX. R. APP. P. 33.1(d).

The standard for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review.  *Wilson*, 168 S.W.3d at 827. The evidence is legally sufficient if it "would enable reasonable and fair-minded people to differ in their conclusions."  *Id.* at 822.  When considering a factual sufficiency challenge, the entirety of the evidence is weighed and considered, not just that evidence which supports the verdict.  *Ramsay v. Tex. Trading Co.*, 254 S.W.3d 620, 625 (Tex. App.—Texarkana 2008, pet. denied) (citing *Mar.*

---

[19]The Bullards did not file in the trial court a motion requesting injunctive relief; rather, the request was included in the petition.

[20]TEX. R. APP. P. 33.1(a).

24

*Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998)). The verdict will be set aside only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996).

Here, the issue on appeal is not framed in terms of the sufficiency of the evidence. Said another way, Solomon does not question the sufficiency of the evidence on which the permanent injunction is based. Rather, the issue is framed in terms of a legal question, i.e., whether the grant of injunctive relief in combination with monetary damages awarded violates the one satisfaction rule. This issue, akin to an election of remedies, was not raised in the trial court. Judgment error regarding questions of law must be raised in the trial court. *See Holland v. Wal-Mart*, 1 S.W.3d 91, 94–95 (Tex. 1999) (Wal-Mart did not waive purely legal issue of whether attorney's fees were recoverable under statute, as it specifically challenged the availability of attorney's fees before the error resulted); *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 600 (Tex. App.—Amarillo 1995, no writ) (constitutional challenge to grant of temporary injunction not preserved when it was merely alleged in answer that temporary injunction would violate rights under United States and Texas Constitutions, with no specification of constitutional right infringed). Thus, to preserve a complaint that the judgment awards a double recovery, a party must raise that complaint in the trial court, either before judgment or in a post-judgment motion. *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998) (party preserved complaint for appellate review

when it properly requested, before judgment, that trial court require opponent to elect its remedy). Here, no such objection was raised.

Solomon relies on *Boudreaux v. Culver*, No. 01-03-01247-CV, 2005 WL 1111237 (Tex. App.—Houston [1st Dist.] May 5, 2005, no pet.) (mem. op.), in support of his position that the issue of double recovery need not have been raised in the trial court. As in this case, *Boudreaux* involved a dispute between neighbors for the alleged negligent flooding of property. The judgment included an award of monetary damages for both temporary and permanent injuries based on the jury verdict as well as an award of permanent injunctive relief by the trial court, requiring Boudreaux to implement a drainage plan.

The sequence of events in *Boudreaux* was markedly different from those presented here. In *Boudreaux*, a motion requesting injunctive relief was filed in the trial court, to which Boudreaux filed a motion in opposition.[21] Thereafter, the trial court granted the motion; a copy of the drainage plan was sent to Boudreaux only after the motion was granted. Boudreaux then filed a motion requesting an injunction hearing, after which the injunction remained in place. On appeal, the court concluded there was no evidentiary basis for the issuance of a permanent injunction ordering the implementation of the proposed drainage plan, which was never introduced into evidence.

---

[21]The motion in opposition to the issuance of a permanent injunction did not raise the double recovery issue (monetary damages for both temporary and permanent injuries were awarded) and Boudreaux therefore failed to preserve for appeal complaints about the damages awarded. *Boudreaux*, 2005 WL 1111237, at *4. Boudreaux preserved his complaint regarding the issuance of the permanent injunction.

26

Moreover, the trial court erred in granting a permanent injunction in addition to monetary damages, as both addressed the same injury.

Boudreaux is distinguished from this case inasmuch as Boudreaux preserved, via post-trial pleadings and presumed attendance at an injunction hearing he requested, his complaints regarding the issuance of a permanent injunction. Here, the record is silent with regard to any complaint regarding the issuance of a permanent injunction. Because Solomon's complaint of error in the judgment was not preserved, that complaint cannot be considered on appeal. TEX. R. APP. P. 33.1(a); see also Homes, 244 S.W.3d at 582; Dal-Chrome Co., 183 S.W.3d at 144.

*(7)    Reconsidering Attorney's Fees Is Not Necessary*

In his final appellate point, Solomon urges a reconsideration of the issue of attorney's fees for all parties, if Solomon prevails on any appellate point. Because Solomon's appellate points have been overruled, this issue is moot. We, therefore, do not address the merits of this point.

For the reasons stated herein, we overrule each of Solomon's appellate points and reform the judgment of the trial court to require recovery of appellate attorney's fees to be expressly conditioned on a successful appeal.

27

As modified, the judgment of the trial court is affirmed.


                                        Josh R. Morriss, III
                                        Chief Justice

Date Submitted:      March 24, 2010
Date Decided:        April 22, 2010