**Affirmed and Memorandum Opinion filed January 31, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00565-CV

## IN THE INTEREST OF C.Z.P., A CHILD

**On Appeal from the 425th Judicial District Court
Williamson County, Texas
Trial Court Cause No. 12-1331-F425**

## M E M O R A N D U M   O P I N I O N

In this appeal the mother of a child with disabilities challenges the trial court's modification of an order based on a mediated settlement agreement in a suit affecting the parent-child relationship. The trial court ruled that both parents would remain joint managing conservators under the modification order, but the court transferred certain exclusive rights to the father, including the rights to establish the child's primary residence and to make educational and medical decisions. The trial court relieved the father of his child-support obligation and imposed a child-support obligation on the mother. The mother contends that the trial court abused its discretion in ordering these modifications. We affirm.

# I.  FACTUAL AND PROCEDURAL BACKGROUND

Cooper is an eleven-year-old boy diagnosed with spectral autism, cerebral palsy, and cranial stenosis.[1]  His parents, Kristine Allen and Ryan Phillips divorced in 2012.  In this appeal, they vie for the right to determine Cooper's primary residence and to have the last word on medical and educational decisions.

Under their divorce decree Allen and Phillips were named joint managing conservators, with Allen getting the exclusive right to determine Cooper's primary domicile within Williamson and Travis Counties and the exclusive right to receive child support.[2]  Phillips, originally awarded standard possession, obtained expanded possession rights through a series of agreements, including a mediated settlement agreement consummated on July 14, 2015, when Cooper was six years old. The trial court memorialized the terms of that agreement in an order signed on September 10, 2015 (the "2015 Order").

A year later, Phillips filed a petition to modify the parent-child relationship, seeking greater periods of possession as well as the right to make educational and medical decisions, and the exclusive right to determine Cooper's primary residence so that Phillips's home would be "the primary residence of the child during the school year."

At trial, the court heard testimony from Cooper's parents, Cooper's step-mother, and various therapists and educators.  Both parents agreed that Cooper's conditions have rendered him unable to produce oral speech. This limitation has interfered with the child's ability to communicate effectively.  Since the mediation,

---

[1] We refer to the child by the pseudonym "Cooper" to protect his privacy.

[2] The Supreme Court of Texas transferred this case from the Third Court of Appeals. In transfer cases, the transferee court must decide the appeal in accordance with the precedent of the transferor court under principles of stare decisis if the transferee court's decision otherwise would have been inconsistent with the precedent of the transferor court. Tex. R. App. P. 41.3.

Cooper has been trained to use an iPad as his primary mode of communication. The evidence at trial showed that the iPad, as a communication device, gives Cooper a voice, but Cooper's use of the device requires attention, supervision, and guidance.

Concluding, among other things, that Phillips had taken the lead role in ensuring that Cooper receives the therapy he needs to develop his communication skills, the trial court modified the 2015 Order, granting Phillips the exclusive rights: (1) to establish Cooper's primary residence; and (2) to make educational and medical decisions concerning Cooper after consultation and input from Allen. The trial court terminated Phillips's child-support obligation, and ordered that Allen pay child support in the amount of $198.02 per month.

Before filing her notice of appeal, Allen filed a motion for new trial and a request for findings of fact and conclusions of law. The trial court did not issue findings of fact and conclusions of law until six months after Allen appealed. After the tardy filing of the findings and conclusions, this court permitted both parties an opportunity to amend their appellate briefs.

## II. ISSUES AND ANALYSIS

### A. Did the trial court abuse its discretion in modifying the terms of the managing conservatorship?

In her first, second, third, and fifth issues, Allen challenges the trial court's order modifying the conservatorship as well as the findings related to these issues.

#### 1. Start date for determining material and substantial change

As a threshold matter, Allen challenges the July 14, 2015 start date for the timeframe for evaluating whether changed circumstances justify modification. Section 156.101 of the Texas Family Code defines the start date as "the earlier of (A) the date of the rendition of the order; or (B) the date of the signing of a

3

mediated or collaborative law settlement agreement on which the order is based[.]" Tex. Fam. Code Ann. § 156.101. Allen insists the date of the 2015 Order (September 10, 2015) controls.

In her opening brief Allen generically argues res judicata in connection with the appropriate start date. Presuming her briefing is adequate on this point, the res judicata doctrine has no bearing on this choice-of-date analysis.

Similarly, under her fifth issue, Allen argues that the trial court should have used the September 10, 2015 date because the 2015 Order contains a merger clause, providing that in the event of conflict between the mediated settlement agreement (signed July 14, 2015) and the 2015 Order, the order's terms supersede the mediated settlement agreement. Under the plain meaning of the applicable statute, the merger clause does not affect the determination of the start date. *See* Tex. Fam. Code Ann. § 156.101(a)(1).

In her reply brief Allen contends for the first time that because "there was no evidence to support what was in the mediation agreement versus the actual order, the date of the order must control." Allen waived this argument. *See Texas Ear Nose & Throat Consultants, PLLC v. Jones*, 470 S.W.3d 67, 84 n. 15 (Tex. App.— Houston [14th Dist.] 2015, no pet.)(overruling as waived arguments first raised in a reply brief on appeal). Yet, even absent this waiver Allen could not prevail on the merits. The parties signed a mediated settlement agreement on July 14, 2015, and the trial court put the terms in the 2015 Order, which states that Allen "agreed to the terms of this order by [her] signature on the mediated settlement agreement." Neither party contends that the terms in the mediated settlement agreement differ from the terms in the 2015 Order.

On this record, the trial court properly used the July 14, 2015 start date, because that is the signing date of the mediated settlement agreement on which the

2015 Order is based. *See* Tex. Fam. Code Ann. § 156.101(a)(1)(B).

**2. Legal and factual sufficiency of the evidence to support modification**

Under her first and second issues, Allen contends that the trial court abused its discretion in granting Phillips the exclusive rights to establish Cooper's primary residence, to make educational decisions concerning Cooper, and to make medical decisions concerning Cooper. Allen challenges the legal and factual sufficiency of the evidence (1) to support finding that circumstances have materially and substantially changed and (2) that the modification is in Cooper's best interest.

In determining issues of conservatorship and possession and access, the primary consideration is always the best interest of the child. *See* Tex. Fam. Code Ann. § 153.002 (West 2014); *Lenz v. Lenz,* 79 S.W.3d 10, 14 (Tex. 2002). We review a trial court's decision to modify an order regarding conservatorship or the terms of possession of and access to a child under an abuse-of-discretion standard. *See Baltzer v. Medina,* 240 S.W.3d 469, 474–75 (Tex. App.—Houston [14th Dist.] 2007, no pet.). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *See Flowers v. Flowers,* 407 S.W.3d 452, 457 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Under an abuse-of-discretion standard, legal and factual insufficiency are not independent grounds of error, but rather function as relevant factors in assessing whether the trial court abused its discretion. *Id.* As long as some evidence of a substantive and probative character exists to support the trial court's decision, we will find no abuse of discretion. *Id.*

When modifying an order that provides for the appointment of a conservator of a child, in addition to a finding that the modification would be in the child's best interest, the trial court must find that "the circumstances of the child, a conservator, or other party affected by the order have changed materially and substantially since

the earlier of (A) the date of the rendition of the order; or (B) the date of the signing of a mediated or collaborative law settlement agreement on which the order is based[.]" Tex. Fam. Code Ann. § 156.101.

The child's best interest holds paramount importance in making any custody call. *See* Tex. Fam. Code Ann. § 153.002; *In re V.L.K.,* 24 S.W.3d 338, 342 (Tex. 2000). A court may use the following non-exhaustive list of factors to determine the child's best interests: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist this individual to promote the best interest of the child; (6) the plans for the child by the individual seeking custody; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex. 1976); *In re H.D.C.*, 474 S.W.3d 758, 766–67 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Allen challenges whether the trial court had both "historical and current" evidence necessary to assess a change in circumstances. *See Zeifman v. Michels*, 212 S.W.3d 582, 594 (Tex. App.—Austin 2006, pet. denied)(discussing the comparison between the original circumstances of the child and the affected parties at the time the existing order was entered with their circumstances at the time the modification is sought). At trial, both parties testified that historically Allen had been in charge of finding healthcare and educational providers for Cooper, which amounts to some evidence that Allen was taking the lead with respect to health care and educational decisions at the time of mediation. The record also contains some trial evidence that after mediation, Phillips took the lead in ensuring that

Cooper received therapy. And, some evidence suggests that it was only after mediation that Allen refused to pursue medical and educational opportunities without reasonable justification.

The record contains no evidence showing that Allen had proven incapable of ensuring that Cooper attended his various medical appointments before mediation. There was some evidence to support the conclusion that after mediation Allen showed an inability to provide the requisite time and support necessary for Cooper to receive regular therapy. The evidence at trial supports the trial court's finding "that speech therapy at MLee therapy was discontinued due to missed appointments and same-day cancellations by Allen," and that appointments with a subsequent provider, River Kids, secured by Phillips, were cancelled by Allen "with such frequency that River Kids discontinued its therapy with [Cooper] in November 2015."

Before the mediation, Cooper was Allen's only child. Following the mediation, Allen gave birth to, and had to care for, another son. Allen testified that the care required for her infant son has limited her participation in Cooper's Applied Behavioral Analysis (ABA) therapy sessions, causing her to miss at least half of the appointments. Phillips attended all appointments on his days with Cooper.

The evidence shows that shortly before mediation Cooper's doctors recommended at-home ABA therapy. Since mediation, augmented communication therapy has become a primary focus, and particularly with the use of an iPad application called "Proloquo2go." After mediation, Cooper was trained on the iPad as a form of alternate augmented communication and that became his primary means of communicating. All professionals that testified agreed that the use of the communication device is critical for Cooper. The record evidence shows Phillips

not only supported Cooper's use of the iPad to communicate, but also ensured that Cooper was using the iPad properly. Allen resisted Cooper's use of the device and was less structured in her oversight of its use.

The trial court reasonably could have concluded that the circumstances of Cooper and Allen had materially and substantially changed, and that the modifications were justified and in Cooper's best interests. Though the evidence showed Allen cared a great deal about Cooper's development, based on the record evidence, the trial court reasonably could have concluded that Phillips was better able to address Cooper's unique needs and get him the necessary therapeutic and educational resources.

Both parties discuss the *Zeifman* case. In *Zeifman*, the Third Court of Appeals reversed a trial court's decision to modify educational-decision rights based on the parties' preferences as between a public school and a private school. *Zeifman*, 212 S.W.3d at 585. This court has distinguished *Zeifman* on the basis that the father presented evidence that the child's educational and social needs were not being met under the mother's existing educational regime. *In Interest of M.C.K.*, 14-17-00289-CV, 2018 WL 1955065, at *7 (Tex. App.—Houston [14th Dist.] Apr. 26, 2018, no pet.). We explained that *Zeifman* stood for the rule that a change in age, by itself, is insufficient to establish a change in circumstances unless the evidence also shows changed needs. In today's case, unlike in *Zeifman*, the trial court reasonably could have found that Cooper had unmet educational and social needs that he did not have at the time of the July 2015 mediation.

### *Challenged Findings*

Under her fifth issue, Allen asserts challenges to certain findings of facts, all of which bear on the facts supporting the conservatorship order.

First, Allen argues that there were no experts and insufficient evidence to

support the finding that Cooper's ability to communicate "will be the most important goal of his childhood education." Much of the testimony offered at trial goes to Cooper's difficulty in communicating. The record evidence, including testimony by a board-certified behavior analyst shows that the ability to communicate is a crucial goal of Cooper's childhood education. Additionally, Cooper's December 2016 neurophysiological evaluation, performed by William Dailey, Ph.D., includes his professional recommendation that "strong emphasis needs to continue on communication skills in particular." Dailey did not testify, but his report was offered without objection; and some of his opinions were discussed with witnesses without objection. The goal to improve Cooper's ability to communicate, acknowledged by both parents, was relevant to the trial court's evaluation of the parents' respective efforts and diligence to further that shared goal.

Allen challenges the lack of expert testimony to support the trial court's "medical determinations related to children versus adults." We interpret this to be a challenge to the trial court's statement that "[d]ue to neurological differences between young children and adults, young children are able to absorb new forms of communication with greater ease." Cooper's therapist, who specializes in speech pathology and speech therapy, testified that "research has shown that early intervention is best because of the way that we can retrain a brain whenever they're younger versus going back and recreating new brain patterns in an older — from a timing standpoint, it's easier to do it when they're younger." The therapist's testimony underscored the urgency of getting Cooper substantial therapy as soon as possible. The record contains some unchallenged competent expert evidence to support this finding.

Allen also generally attacks unspecified medical opinions in the findings of

9

fact as not supported by sufficient evidence "because there was no medical expert testimony." For the sake of argument, we presume that Allen's broad sufficiency challenge to medical testimony targets the treatment recommendations of non-testifying doctors, specifically, Cooper's developmental pediatrician, Dr. Siv Fasci's recommendation that Cooper receive 10 to 15 hours of ABA therapy a week and Dr. Harschbuger's recommendation that Cooper have X-rays performed on his jaw. These medical-treatment recommendations were offered through the testimony of other witnesses, without objection. Even without having objected at trial to the presentment of this evidence, Allen raises an arguable sufficiency complaint. *City of Keller v. Wilson*, 168 S.W.3d 802, 812 (Tex. 2005) (stating that when expert testimony is required, lay evidence supporting liability is legally insufficient). It does not appear from our record that witnesses who discussed the recommendations sought to establish that the treatment was medically reasonable or necessary; they could fairly testify about the recommendations made and the actions taken on the basis of those recommendations.

Allen also challenges the legal and factual sufficiency of the evidence in the record for the trial court's finding that "[Cooper] could not get additional therapy with [Allen]." It is not apparent which language in the trial court's findings is the target of Allen's challenge. We presume that her challenge is directed at the following statements:

> The parties have, since the July 14, 2015 Mediated Settlement Agreement, shown a material and substantial difference in their respective motivations and abilities to ensure that Cooper receives the amount of therapy he needs. With regard to the in-home ABA therapy appointments during [Phillips's] possession periods, Phillips ensures that [Cooper] receives two hours and forty-five minutes of ABA therapy. During [Allen's] possession periods, [Allen] allows only one hour and forty-five minutes of therapy. The insufficient time for therapy in [Allen's] home has caused [Cooper] to consistently fall

10

> short of the 10-15 hours recommended by his developmental pediatrician, Dr. Siv Fasci.
>
> The parties have, since the July 14, 2015 Mediated Settlement Agreement, shown a material and substantial difference in their respective motivations and abilities to participate in [Cooper's] therapy. During the aforementioned in-home ABA therapy sessions, [Phillips] participates in all of the therapeutic sessions. Out of thirty-two sessions, [Phillips] participated in thirty-two. Out of seventy sessions in [Allen's] home, [Allen] participated in roughly half of them.

The record evidence supports the above findings. Allen obtained ABA training so that she could provide the ABA therapy at home herself. Meche testified that Allen had made efforts "to try to get some additional hours" of therapy. Yet, to the extent that Allen suggests that the evidence contradicts the court's decision, there may be such evidence. Even so, that evidence does not render the trial evidence legally or factually insufficient to support the trial court's rulings.

In a nonjury trial, the trial judge is best positioned to assess the witnesses' demeanor and gauge credibility, and we defer to the trial court's resolution of conflicts in the evidence. *In Interest of J.R.P.*, 526 S.W.3d 770, 780 (Tex. App.—Houston [14th Dist.] 2017, no pet.). A trial court does not abuse its discretion when the record contains some evidence of a substantive and probative character to support its decision. *Id*. Having reviewed the record evidence and trial court's findings of fact in light of Allen's challenges to the findings, we find no abuse of discretion with respect to the court's order transferring the exclusive conservatorship rights to Phillips. Accordingly, we overrule Allen's first, second, and fifth issues.

## 3. Did the trial court abuse its discretion by adding terms for Allen's possession when Phillips did not seek that relief?

In her third issue, Allen asserts procedural challenges to the modification of

conservatorship, arguing that the trial court abused its discretion by flipping Allen and Phillip's respective conservatorship and possession rights on the basis that (1) "it was not tried as a case to change the right to determine the domicile of the child, changing the possession"; (2) the court lacked legally and factually sufficient evidence that such changes were necessary to grant the relief that Phillips was pursuing at trial, which in Allen's estimation, was control over medical and educational decisions; and (3) that Phillips failed to request "a change in the right to determine the domicile of the child and/or to basically flip the possession schedule" in a pre-trial document (that is not a part of our record).

This was not simply a case about which school was best for Cooper or the school district in which Cooper would reside. The trial record shows that Cooper's educational and medical needs were tied inextricably to the ability and motivation of those around him to provide the necessary daily support to meet his crucial needs. The parties tried the case to determine which parent would hold all the exclusive rights.[3]

Allen's waiver argument goes against the plain language set out in Phillips's modification petition, which states:

> . . . Phillips requests the right to enroll this special needs child in a school program that best meets the child's needs and provides for a Functional Communication class that utilizes assisted technology to allow the child to communicate with others. Phillips is requesting to be awarded the right to determine the primary residence of the child for this purpose, and the right to make educational decisions and medical decisions to enroll the child in a school that will provide more specialized classes to meet this child's needs and to provide the child with substantially increased ABA therapy hours.
>
> [Phillips] requests that the terms and conditions for access to or

---

[3] As discussed in section II.A.2 above, the evidence is legally and factually sufficient to support the trial court's rulings on these issues.

possession of the child be modified to provide as follows: Establish Ryan Phillips['s] home as the primary residence of the child during the school year.

Phillips sought not only the exclusive right to determine Cooper's domicile, but also a ruling that Cooper's primary residence would be with Phillips during the school year—the converse of the modified 2015 Order. The record does not indicate that Phillips ever amended his petition, and Phillips never withdrew or abandoned any component of the request for relief contained in his pleading. The trial court's order, which flips the parties' possession rights, conforms with Phillips's request. *See* Tex. R. Civ. P. 67, 301. Therefore, we overrule Allen's third issue.

## B. Did the trial court abuse its discretion in modifying the terms of the child support?

In her fourth issue, Allen complains that the trial court abused its discretion in relieving Phillips of his child-support obligation and in requiring Allen to pay child support. Allen's challenge is twofold: (1) she argues that Phillips did not request this relief and (2) she contends that no legally or factually sufficient evidence supports the child-support modifications.

## 1. Alleged failure to request relief

Phillips's petition contains a clear request that the trial court terminate his child-support obligations, but no request that Allen pay child support.

Following the trial court's rendition of judgment, the trial judge noted that Allen's child-support obligation had not been addressed and stated that the trial court "hoped" that the parties would agree to "guideline support," and invited them to set the matter for a later hearing if they did not. There is no record that such a hearing was ever requested or set, and instead the parties submitted a proposed

order (agreed in form) that set Allen's child-support obligation at $198.02 per month. The trial court then signed and issued its order relieving Phillips of his child-support obligation and requiring Allen to pay child support in this amount.

Allen never moved to modify the judgment on the grounds that such relief had not been pled, and she failed to raise the issue in any of the post-trial motions that she did file. Although Texas Rule of Appellate Procedure 33.1(d) permits Allen to raise her legal and factual sufficiency complaints for the first time on appeal, the rule does not allow a party to raise a lack-of-pleading issue for the first time on appeal. *See Dodd v. Savino*, 426 S.W.3d 275, 290–91 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Solomon v. Steitler*, 312 S.W.3d 46, 61 (Tex. App.—Texarkana 2010, no pet.). Accordingly, to the extent that Allen challenges the relief granted in the judgment as not conforming to the pleadings, she has failed to preserve that error for appellate review. *See Dodd*, 426 S.W.3d at 290–91.

## 2. Legal and factual sufficiency of evidence showing a change in circumstances justifying modification

Presuming that Allen sufficiently briefed her challenge to the legal and factual sufficiency of the evidence supporting the trial court's order relieving Phillips of his child-support obligation and imposing child-support obligations on Allen, we first consider whether the record contains legally and factually sufficient evidence to support the modifications. A "court may modify an order that provides for the support of a child. . . if the circumstances of the child or a person affected by the order have materially and substantially changed. . . ." Tex. Fam. Code Ann. 156.401(a)(1). A change in the conservatorship and primary residence is a material and substantial change that can be considered in modifying child-support provisions. *In Interest of J.O.A.*, 14-14-00968-CV, 2016 WL 1660288, at *9 (Tex. App.—Houston [14th Dist.] Apr. 26, 2016, no pet); *In re V.L.K.*, No. 02–10–

14

00315–CV, 2011 WL 3211245, at *3 (Tex. App.–Fort Worth July 28, 2011, no pet.) (mem. op.) ("[A] change in custody of a child is, in and of itself, a material and substantial change."). Thus, the reasons justifying the modification of the conservatorship simultaneously operate to justify the modification of child support.

We next consider whether the record contains legally and factually sufficient evidence to support the amount of the child support ordered. We begin by noting that the Texas Family Code allows the court to presume that an order conforming to the child-support guidelines is reasonable and in the best interest of the child. *See* Tex. Fam. Code Ann. § 154.122. The record contains evidence that both Phillips and Allen were employed, and each enjoyed a steady source of income. Although Allen testified that she had worked as a nursing assistant, neither party presented any evidence of Allen's wages from that job or any evidence of her net resources. In the absence of such evidence, the Texas Family Code requires the court to presume that the obligor has wages or salary equal to federal minimum wage for a 40-hour work week. Tex. Fam. Code Ann. § 154.068; *In re B.J.W.S.*, 14-08-01154-CV, 2010 WL 4396291, at *9 (Tex. App.—Houston [14th Dist.] Nov. 4, 2010, no pet.). The record contains no evidence rebutting this presumption.

If Allen earned the federal minimum wage for a 40-hour work week, the amount of monthly child support that she would pay under the child-support guidelines would be more than the $198.02 the trial court ordered. We presume that the amount of monthly child support established by the child-support guidelines in effect at the time of the hearing is reasonable and that an order of support conforming to the guidelines is in the best interest of the child. *See* Tex. Fam. Code Ann. § 154.122; *In re B.J.W.S.*, 2010 WL 4396291, at *9.

We conclude that the trial evidence is legally and factually sufficient to

15

support the amount of the child support the trial court ordered Allen to pay. We overrule Allen's fourth issue.

### III. CONCLUSION

The trial court observed "that all family members love [Cooper]." The record evidence supports that finding. Having reviewed Allen's appellate issues under the applicable standards of review, we find no grounds for reversing the trial court's judgment. Accordingly, we affirm the trial court's judgment.


/s/    Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Christopher and Bourliot.