

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-13-00006-CV

---

FIN & FEATHER CLUB, BY AND THROUGH
TRUSTEE, KENNETH PARTEN, Appellant

V.

DALE LEANDER AND DON LEANDER, Appellees

---

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. 37293

---

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

# OPINION

## I.      Background

This involves a lawsuit brought by the Fin & Feather Club, by and through trustee, Kenneth Parten (the Club) against Dale Leander and Don Leander, seeking to recover debts which arose from club dues, assessments, and other charges related to membership in the Club. This is not the first appearance of this case before us, it having been the subject of a previous appeal mentioned below wherein we remanded the matter to determine the issue of damages. On remand, the damage issues were tried to a jury.[1]  After the Club rested its case, Dale and Don moved for a directed verdict. Because the trial court determined that the Club failed to introduce any probative evidence of its damages, it granted the motion for directed verdict and dismissed the Club's claims and causes of action with prejudice. It further ordered the Club to pay Dale and Don's attorney's fees as well as costs of court and costs and fees on appeal. The Club appeals, claiming the trial court erred in granting Dale and Don's motion for directed verdict. We affirm the judgment of the trial court.

## II.     Standard of Review

A trial court's directed verdict is reviewed de novo. *John v. Marshall Health Servs., Inc.*, 91 S.W.3d 446, 450 (Tex. App.—Texarkana 2002, pet. denied) (citing *Knorpp v. Hale*, 981 S.W.2d 469, 471 (Tex. App.—Texarkana 1998, no pet.)).  Review of a directed verdict is conducted by making a legal sufficiency analysis of the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005); *Solomon v. Steitler*, 312 S.W.3d 46, 56 (Tex. App.—Texarkana

---

[1]The initial trial was to the bench.

2010, no pet.). When reviewing the directed verdict in this case, we examine the evidence in the light most favorable to the Club and decide whether there is any evidence of probative value to raise an issue of material fact on the question of damages. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011) (citing *Henderson v. Travelers Ins. Co.*, 544 S.W.2d 649, 650 (Tex. 1976)). The presence of some evidence "will defeat the directed verdict." *Id.* at 220.

A "no evidence" point will be sustained only (a) if there is a complete absence of evidence establishing a vital fact, (b) the only evidence offered to prove a vital fact cannot be considered due to a rule of law or evidence, (c) there is less than a scintilla of evidence to prove a vital fact, or (d) the opposite of a vital fact is conclusively established. *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010). More than a scintilla of evidence exists when the evidence permits the conclusion of reasonable and fair-minded people to differ. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). In our analysis, we credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *Solomon*, 312 S.W.3d at 56.

## III.    Analysis

The contract as alleged by the Club involved a promise to pay membership dues, fees, and assessments. At the first trial, the trial court found that Dale owed $26,778.00 to the Club in fees and assessments and that Don owed dues and fees and assessments in the amount of

$10,960.00.  *See Leander v. Fin & Feather Club*, No. 06-10-00135-CV, 2012 WL 75815, at *1

(Tex. App.—Texarkana Jan. 11, 2012, no pet.) (mem. op.).  We reversed these damage awards

because there was insufficient evidence to support them.[2]

> By way of background, the record indicated, and this Court found that:
>
> (1) Dale owned one share [in the Club], which he transferred to his father in 1996, (2) Don owned one share and inherited Dale's former share in 1998, (3) in 2005, Don transferred both shares to Father and Sons Property, LLC.  During the pertinent time period, Father and Sons Property, LLC, owned both shares.

*Id*. at *6.

In this Court's previous opinion, we concluded that there was insufficient evidence of the

amount of damages that Don owed the Club.  The evidence indicated that Don owned a single

share in the Club from 1992 to 1998, at which time he became the owner of two shares.  *Id.* at

*9.  We further concluded that Don owed dues, fines, and fees for those two shares from

October 13, 2002, through some point in 2005, when the deed conveying Don's two shares was

delivered to Father and Sons Property, LLC.  *Id*.  However, we concluded that (i) there was no

evidence Don transferred his two shares to Father and Sons Property, LLC, on April 15, 2005,

(ii) there was no evidence of the identity and ownership shares of the principals of Father and

Sons Property, LLC, and (iii) there was insufficient evidence of the amount of damages owed by

Don.[3]  *Id.*

---

[2]The claimed damages are comprised of unpaid club dues, late fees, "'special call'" dues, "'no show'" fines for work days, and fines for "'chronic non pay dues/rules.'"  *Leander*, 2012 WL 75815, at *1.

[3]The damage summary admitted into evidence in that case failed to separate out amounts owed by Dale and by Don during their respective periods of Club membership, in accord with the number of shares owned by each.

4

We, likewise, previously concluded there was insufficient evidence to support the damage award against Dale. We found some indication that Dale owned some interest as a principal in Father and Sons Property, LLC.[4] Even in the face of that indication, (i) there was no evidence of the identity and ownership shares of the principals of Father and Sons Property, LLC, and (ii) there was insufficient evidence of the amounts owed by Dale. *Id*.

Accordingly, we reversed the damages portion of the trial court's judgment and remanded that issue to the trial court. We now examine the evidentiary record on re-trial to determine if there is any evidence of probative value to raise an issue of material fact on the question of damages.

## A.     The Evidence

The sole witness called by the Club was Kenneth Parten, a member of and records custodian for the Club.[5] In 2003, "or somewhere in that area," Parten was informed by Don that he had sold his shares to Dale. Parten then testified that the trustee's report appended to the 2005 Club meeting minutes indicates that Don called Parten and informed him that Dale had purchased his shares. Parten clarified his testimony, indicating that he was told about the transfer in 2005, but learned that the actual transfer was made in 2003. Parten indicated that all charges to Don and Dale are reflected in the minutes of the meetings.[6]

---

[4]In September 2010, the trial court ordered the property owned by the Club to be partitioned in kind. The order awarded a one-eighth interest in the Club property to Dale. "The unchallenged award to Dale of an interest in the Club property is at least some indication of his interest, as a principal, in Father and Sons Property, LLC." *Id*. at *6.

[5]Parten has been a member of the Club (a hunting, fishing, and recreational club) since 1983.

[6]The Club's exhibits two through sixteen (the Club meeting minutes) were marked as evidence but were never admitted into evidence. Likewise, exhibit seventeen (a letter regarding violation of the Club rules) was marked but

5

The Club introduced, without objection, a summary of fees, dues, and fines alleged by the Club to be owed by Dale and Don.[7]  The summary lists fees, dues, and fines owed by Don from October 13, 2002 (four years prior to the filing of the lawsuit) through December 15, 2003, in the total amount of $7,656.00.  The summary lists fees, dues, and fines owed by Dale from March 31, 2004, through June 23, 2010, in the total amount of $32,002.00.[8]  This breakdown is based on the change in share ownership.[9]  Parten testified that the summary was correct, even though, as of April 25, 2003, all charges were resolved so that there was no balance as of that date.[10]

Parten explained that Don's debt stopped at the time he notified the Club that he had sold his shares in the Club to Dale.  This date of notification is listed on the summary as December 15, 2003 (Parten said that he believed December 15, 2003, to be the date Don had provided as being the date of his transfer of the two shares to Dale).

---

not admitted into evidence.  Although these exhibits were not admitted, Parten offered limited testimony regarding the contents of some of these documents.

[7]This summary purports to be a compilation of amounts owed by Dale and Don, as reflected in the minutes of the Club's meetings.

[8]From 2004 forward, the Club paid Dale's share of real estate taxes.  Those taxes (that remained unpaid by Dale) constitute a part of what the summary indicates was owed by Dale.

[9]When Don informed Parten of the change in ownership, the Club changed its records to reflect the assignment and, thereafter, attributed the ownership of both shares to Dale.  Parten created the summary from the minutes of the Club's meetings.

[10]The minutes of a special meeting in April 2003 reflected that Dale and Don were credited with their portion of a legal settlement involving damage to the spillway of the lake belonging to the Club against outstanding dues, fines, and fees.  The amount of the credit was $1,697.00 per share, with a total credit of $3,394.00.  At that time (April 12, 2003), neither Dale nor Don owed any money to the Club.

At the conclusion of Parten's testimony,[11] Dale and Don moved for a directed verdict on the basis that the Club did not "put on any preponderance of the evidence that would indicate any legal ownership by Don Leander or Dale Leander or Father [and] Son . . . ." The Club replied that "the testimony in the record is that . . . Don Leander, a party to the case, said he owned the property until 2013, and then Don Leander, a party to the case, said he had sold his shares to Dale Leander."[12]

---

[11]Much of Parten's testimony was unrelated to the damage issues in question.

[12]The following exchange between the trial court and counsel for the Club ensued:

> THE COURT: What evidence are you relying on, [Club's counsel], in this trial?
>
> [Club's Counsel]: In terms -- I'm just trying to pick a date that he's happy with.
>
> COURT: . . . [I]t's not about us picking a date. I'm asking you to tell me what evidence indicates in the record.
>
> [Club's Counsel]: There is no evidence in the record in -- thus far the evidence in the record that we've got in the testimony, it was transferred in 2005, which is what Don told --
>
> THE COURT: . . . . I'm talking about in this jury trial. In this jury trial, what is the testimony about when this information was specifically conveyed to someone else?
>
> [Club's Counsel]: Thus far, the only testimony is what Don told Ken Parten. 2005.
>
> . . . .
>
> THE COURT: Okay. And you're saying that was . . . at April 16, 2005, that they had that information. Other than them knowing on April 16, 2005, that a transfer occurred, what testimony do you have --
>
> . . . .
>
> [Club's Counsel]: At this point, that's it. The testimony of Ken Parten, that's what Don told him, which is recorded in the minutes.
>
> THE COURT: We don't have a date certain. . . .
>
> [Club's Counsel]: We don't have a date certain.
>
> THE COURT: -- the same problem that we had in front of the court of appeals.

7

Rather than directing a verdict at that point, the trial court granted the Club's request to reopen the evidence—but only after the defense was permitted to cross-examine Parten. Additional testimony revealed that the summary reflected Dale's 2005 annual dues for two shares as $1,800.00 (i.e., $900.00 per share). In 2004, the minutes of the annual meeting indicated that annual dues were to be charged at $400.00 per share. Parten testified that as a result, the summary reflects a $500.00 per share discrepancy in the amount of the 2005 dues owed by Dale.[13] Parten testified, in other words, that the total annual dues for the 2005 year for both shares should have been $800.00 rather than the $1,800.00 reflected in the summary.

Parten further testified that the Club's exhibit twenty-one is a copy of a deed conveying one share in Fin & Feather Club to Father and Sons, LLC,[14] an instrument placed of record with the county clerk August 27, 2010. A correction deed, recorded on October 8, 2012, lists the

. . . .

. . . . And, right now, we have the same lot that we found ourselves when the case was decided by myself and the court of appeals had to send it back saying it's insufficient. And, [counsel], it's insufficient. Your case at this point is insufficient. I'll point out that there are several exhibits that you're relying on as well that have not been offered into evidence. . . .

. . . .

[Club's Counsel]: I request to reopen, then, Your Honor, and we will put in a deed or two.

THE COURT: Okay. The Court will grant your request to reopen.

[13]Parten's cross-examination also raised questions regarding the issue of whether the Club records were complete and accurate. Part of the damages claim is based on fines levied for meetings Dale and Don (who lived out of town) missed. The issue of whether meeting notices were properly mailed undermines the propriety of assessing fines for meetings Dale and Don did not attend. This testimony is not pertinent to the issue of whether the directed verdict was proper.

[14]While Parten testified about this exhibit, the deed was not offered into evidence by either party. We note, however, that the deed reflects a grant of a two-sixteenths interest in the Club property to Father and Sons, LLC. Parten testified that one share equals a one-sixteenth interest in the Club's total acreage.

8

grantee as Father and Sons *Property*, LLC.[15]  Parten testified that he reviewed the transcript of

Dale's deposition, in which Dale testified that he had formed, and is the owner of, "Father [and]

Sons Property, *Inc*."  (Emphasis added.)

Following this testimony, the Club then rested its case, whereupon Dale and Don again

moved for a directed verdict, a motion which was granted.  The trial court entered a judgment

denying any relief to the Club and granting attorney's fees and costs to the Leanders.  The Club

has appealed from that ruling and the entry of that judgment.

### B.  No Error in Grant of Directed Verdict

Three main issues remained unresolved following the first trial:  (a) the identity and

ownership shares of the principals of Father and Sons Property, LLC, (b) the date on which Don

transferred his two shares to Father and Sons Property, LLC, and (c) sufficient evidence of the

amount of damages owed by Dale and Don to the Club.

### 1.  Identity of Principals and Ownership Shares of Father and Sons Property, LLC

Evidence at the first trial established that Dale transferred his single share in the Club to

his father in 1996.  Don inherited this share in 1998 at the death of their father, leaving Don with

two shares.  Dale owned no shares in the Club after 1996.  Don later conveyed his two shares in

the Club to Father and Sons Property, LLC.  *Id.* at *6.  Dale was alleged to be a principal in

Father and Sons Property, LLC, but there was no evidence that Dale would have been personally

responsible for the debts, if any, of Father and Sons Property, LLC.  Even if Dale's ownership of

---

[15]This exhibit (the correction deed) was, likewise, not offered into evidence.

Father and Sons Property, LLC, had been affirmatively established, the Club's petition did not include any pleadings showing a theory under which Dale would be responsible for the debts of this limited liability company and offered no proof to sustain such a claim. In our previous opinion, we stated that "[t]he unchallenged [partition] award to Dale of an interest in the Club property is at least some indication of his interest, as a principal, in Father and Sons Property, LLC." *Id.* However, we did not find that evidence sufficient to support a damage award against Dale.[16]

There is less than a scintilla of evidence on the issue of the identity of the principals of Father and Sons Property, LLC. *See Jelinek*, 328 S.W.3d at 532. On this issue, Parten testified that Dale's deposition testimony indicates that Dale is the owner of "Father [and] Sons Property, Inc." There is no testimony that Dale is the owner of Father and Sons Property, LLC. There is no testimony that Father and Sons Property, LLC, is the same legal entity as Father and Sons Property, Inc., although one could certainly surmise that is the case.[17] Employment of this surmisal, however, does not raise this evidence even to the level of a scintilla. *See Chapman*, 118 S.W.3d at 751. Additionally, there is no testimony regarding the identity of other principals, if any, of Father and Sons Property, LLC. The evidence here is merely that the deed was "a deed deeding a share of the Fin & Feather Club to a Father [and] Sons LLC." There was no evidence before the jury of the identity of the grantor. Neither the original conveyance itself nor the correction deed was introduced into evidence. This evidence is insufficient to show that Dale is

[16]In the jury trial below, there was no evidence or testimony presented to the jury regarding the partition award to Dale, so that not even this "indication" of Dale's interest in the LLC was presented to the jury.

[17]This may have been a lapsus linguae or slip of the tongue because there is no other mention of a "Father [and] Sons Property, Inc."

10

a principal of the LLC. Further, the issue regarding the extent of Dale's ownership shares in the LLC is moot, as it is logically predicated on sufficient evidence that Dale is a principal of Father and Sons Property, LLC.[18]

Even if there had been evidence to firmly establish that Dale was the sole principal of Father and Sons Property, LLC, there is nothing to show that Dale would have been responsible for a debt incurred by the LLC. The Legislature specifically authorized single-member limited liability companies in Section 101.101(a) of the Texas Business Organizations Code. TEX. BUS. ORGS. CODE ANN. § 101.101(a) (West 2012). Under that Code, a member or manager of a limited liability company is not liable for the company's debts, obligations, or liabilities except to the extent the company agreement specifically provides otherwise. *See* TEX. BUS. ORGS. CODE ANN. §§ 101.104, 101.114 (West 2012); *see also* TEX. BUS. ORGS. CODE ANN. § 101.113 (West 2012). The statutory protections afforded to members and managers of an LLC give way only when a plaintiff can show that the LLC was used for the purpose of perpetrating, and did perpetrate, an actual fraud for the member or the manger's direct personal benefit. *See Shook v. Walden*, 368 S.W.3d 604, 621 (Tex. App.—Austin 2012, pet. denied) (policies governing piercing veil of corporation also apply to limited liability companies). Under those circumstances, the court may pierce the corporate veil and hold the member or manager personally liable. *Id.* No real effort was made here to pierce the protective veil provided by the LLC. To pierce the veil, it is not enough to show that the LLC was an alter-ego or a "sham" company. *Id.* Evidence that a company was used as an alter ego does not, by itself, create an

---

[18]Because we do not find the issue of Dale's personal liability for the debts of Father and Sons Property, LLC, was one that was properly raised, we ignore that issue here.

11

issue regarding whether it was used to commit an actual fraud on the plaintiff for the defendant's personal benefit. *See Shaw v. Maddox Metal Works, Inc.*, 73 S.W.3d 472, 481 (Tex. App.—Dallas 2002, no pet.). To recover against a member of an LLC individually, the plaintiff must show dishonesty of purpose or intent to deceive. *See Menetti v. Chavers*, 974 S.W.2d 168, 174 (Tex. App.—San Antonio 1998, no pet.). There was none of that kind of evidence presented here. Accordingly, there is no evidence that either Don or Dale was liable for the fees and charges attributable to the time that the shares were owned by the LLC.

### 2. The Date of Don's Share Transfer to Father and Sons Property, LLC

As previously explained, a key issue in the first trial (a bench trial) did not regard the chronology of the transfer of shares from Don to Dale but, rather, when Don transferred his shares to Father and Sons Property, LLC. The evidence was not only insufficient to show that Dale was a principal in the LLC or that he was liable under some theory for its debts; evidence of the *date* of transfer to that entity was likewise insufficient. We determined that although the deed transferring the interest or share was executed in 2003,[19] the testimony showed that the deed was not filed until sometime in 2005. In our previous opinion, we stated that "[t]he fact that Don filed the deed himself would tend to indicate the deed was not delivered before the time it was filed in 2005. While there is no direct testimony indicating when the deed was delivered,

---

[19]Neither the deed nor a copy of it was admitted into evidence at either trial. Therefore, there was no evidence from the face of that deed or from any direct testimony in this case regarding the date this deed was executed.

a reasonable fact-finder could conclude that a transfer did not take place before the deed was filed."[20] *Leander*, 2012 WL 75815, at *5.

In the present case, we have determined that evidence of Dale's position as a principal of Father and Sons Property, LLC, is insufficient to support a damage award against him. Even so, evidence of the *date* of Don's transfer is important, as it would establish the outer boundary of any damage claim against Don. The evidence, however, remains insufficient to establish the date of Don's share transfer.

Parten testified that the "actual transfer" occurred in 2003 "or somewhere in that area." The evidence reflects that the deed was filed for record August 27, 2010, and a purported correction deed was filed for record October 8, 2012. As we pointed out in our previous opinion, the act of filing or recording a deed is not the act which operates to convey title to real property. *Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 869 (Tex. App. Dallas—2005, no pet.). Rather, a conveyance is effective and title is conveyed when an executed deed has been delivered to the grantee. *Id*. Here, although there is some evidence that the "actual transfer" occurred in 2003, a conveyance takes effect when an executed deed has been delivered. There is no evidence in the record of either one of these dates. A jury could infer, however, that by "actual transfer," Parten meant that Don affected a legal conveyance of the property. However, evidence that the conveyance occurred sometime during the year 2003 lacks the specificity needed to pin down the outer boundary of Don's financial obligations to the Club.

---

[20]Based on this evidence, we indicated that "Don appears to have transferred his two shares to Father and Sons Property, LLC in 2005." *Id*. at *9. However, there was no evidence that this transfer occurred on April 15, 2005. *Id*. On retrial, the evidence showed that the deed in issue was not filed until August 27, 2010.

13

A critical time period exists between the date of execution of the deed and the only other definitely identifiable date that is pertinent to this question—the date the deed was placed with the county clerk for recording. Any determination that the conveyance took place on the date it was filed for record would necessarily rest on rank speculation and surmise. The date of delivery of the deed is, for purposes of the damage determination here, the vital fact. Less than a scintilla of evidence has been shown on this issue.[21]

The Club contends that the actual delivery date of the deed is irrelevant because it was not filed until August 2010. Because it would stand in the posture of a creditor of Dale and Don, the Club takes the position that the conveyance is void as to it unless and until the deed has been filed for record. In support of this position, the Club relies on Section 13.001 of the Texas Property Code. *See* TEX. PROP. CODE ANN. § 13.001 (West 2004). It further relies on *Noble Mortgage & Investments, LLC v. D & M Visions Investments, LLC*, 340 S.W.3d 65 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Because the Club maintains that the deed is void as to it, the Club contends that the only equitable and rational solution is to utilize the date the Club received notice from Don of the share transfer as the date of transfer. This notice occurred in 2005. We disagree with the Club's reasoning and proposed solution.

---

[21]Counsel contended, in comments to the court, that the conveyance occurred in 2005, and in any event, conceded that "[w]e don't have a date certain."

14

Section 13.001(a) of the Texas Property Code provides,

> A conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law.

TEX. PROP. CODE ANN. § 13.001(a). A "creditor," for purposes of this statute[22] has been interpreted to mean "only such creditors as have acquired some character of lien upon or interest in the [] property . . . ." *Keller v. Smalley & Harris*, 63 Tex. 512, 519 (1885); *Paris Grocer Co. v. Burks*, 101 Tex. 106, 111 (1907); *In re Lindahl*, 59 F.2d 91, 93 (Bankr. S.D. Tex. 1932); *see Sinton State Bank of Sinton v. Odem*, 75 S.W.2d 895, 897 (Tex. Civ. App.—Beaumont 1934, writ dism'd) (only those judgment lien creditors are protected who, when abstracting their judgments, were without notice of judgment debtor's interest). Because the Club neither claimed to have a lien nor proved that it did, Section 13.001 does not apply.[23] The *Nobel* case adds nothing to the equation.

---

[22]An early predecessor to our current statute was much the same:

> Article 4332 of our Revised Statues is as follows: "All bargains, sales and other conveyances whatever, of any lands, tenements and hereditaments, * * * which shall hereafter be made and executed shall be void as to all creditors and subsequent purchasers for valuable consideration without notice, unless they shall be acknowledged or proved and filed with the clerk, to be recoded as required by law," etc. This statute has been in force in this state since 1840 . . . .

*Ward v. League*, 24 S.W. 986, 988 (Tex. Civ. App. 1894); *see Stephens v. Keating*, 17 S.W. 37 (Tex. 1891).

[23]In fact, counsel conceded as much at the first trial of this matter. In apparent contradiction to this statement, the Club asserts in its reply brief that it has an equitable lien on Dale and Don's interest in the Club property because it has paid their share of real property taxes for a period of time. Even though it did not plead this theory of recovery at trial, it now claims entitlement to creditor status pursuant to Section 13.001(a) of the Texas Property Code. *See* TEX. PROP. CODE ANN. § 13.001(a). Even assuming the statute is applicable (a holding we do not make), the statute only applies to a creditor without notice of the unrecorded instrument. The evidence in the record before us indicates the Club had notice of the deed in 2005, long before it was recorded. The Club also contends, for the first time in its reply brief, that Dale and Don are estopped to deny the 2005 transfer date. A reply brief may address any matter in the appellee's brief. TEX. R. APP. P. 38.3. The issue of estoppel was neither raised in Dale and Don's

### 3. Amount of Damages Owed by Dale and Don

The summary of fees, fines, and dues admitted at trial separately breaks down the amounts owed by each Dale and Don. This was a problem in the last case, which has now been corrected. Even so, the summary is of little value, given the insufficiency of the evidence to establish Dale's position as a principal of Father and Sons Property, LLC, or evidence to reflect that he was liable for the debts of that entity. With respect to Don, and as previously explained, the evidence is insufficient with respect to the date on which he transferred his two shares. Because of this deficiency, the jury would not have been in a position to determine a date on which Don's financial obligations to the Club ceased. The summary is thus insufficient evidence of the damage claims against both Don and Dale.

## IV. Conclusion

Because the Club failed to present probative evidence to raise a material fact issue on the question of the damages owed by either of the two appellees, the trial court did not err in directing a verdict against it. *See Exxon Corp.*, 348 S.W.3d at 217.

We affirm the judgment of the trial court.

Bailey C. Moseley
Justice

Date Submitted:     September 3, 2013
Date Decided:       October 16, 2013

---

brief, nor was it raised in the Club's initial brief. Further, there was neither a pleading at the trial level concerning estoppel, nor any proof of that theory at that level. We, therefore, do not consider this argument.