

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00052-CV

_____

TAMI DONALD, JERRY MOORE, AND
SUMMIT SPRING WATER COMPANY, INC., Appellants

V.

BRIAN RHONE, BMR DISTRIBUTING, INC.,
CHRIS RHONE, AND RHONE WATER COMPANY, INC.
D/B/A FROSTY'S WATER, Appellees

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. 38803

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

# O P I N I O N

An obscure fact situation mixed with a complicated legal history bodes for substantial confusion. It is often helpful to commence an opinion by laying the factual background. However, that format is virtually impossible in this case because the record contains precious little evidence upon which to base such a rendition. In order to present a factual background of this case, it was necessary to cobble together from the pleadings filed (although these pleadings were never introduced as evidence) and the arguments of counsel what may be the facts of the case. This is about the clearest picture of the events involving the litigation this Court was able to glean from the record before it. Because they have not been subjected to cross-examination, the "facts" may tend more toward supposition than is customary.

## I.    Underlying Fact Situation

Tami Donald and Jerry Moore, apparently intermittently operating as Summit Spring Water Company, Inc., operated a business over several years that bottled and sold water in three- and five-gallon bottles, along with pertinent accessories. Donald and Moore entered into an agreement called an asset purchase agreement wherein they agreed to sell their "water sales route with approximately 240 customers, 2000 GMC water delivery truck, water bottling equipment, 2001 Chevrolet van, forklift, racks, bottles, and other miscellaneous inventory" to two of Summit's customers, Chris and Brian Rhone, who already owned two other businesses, BMR Distributing, Inc., and Rhone Water Company, Inc. Under the agreement, the Rhones were obligated to pay Donald and Moore $240,000.00, payable in forty-eight monthly installments of $5,000.00 per month. The agreement itself made no mention of Summit (showing the sellers as being Donald

2

and Moore) and reflected the buyers as "Brian Rhone of BMR Distributing and Chris Rhone as individuals."

Unfortunately, the Rhones stopped making the monthly installments less than a year after entering into the agreement, and a portion of the assets that were the subject of the agreement were repossessed by Summit and/or Donald and Moore, who resold those assets to a third party. The Rhones complained that Donald and Moore did not comply with the necessary notice requirements during the foreclosure proceedings. Despite the partial repossession, Donald and Moore maintain that the Rhones continued to market water to some of the more lucrative routes that had been sold and continued to use some of the equipment conveyed under the purchase agreement.

## II.     Proceedings in Court

Donald and Moore[1] filed suit against Rhone[2] for breach of the agreement, fraud in the inducement, breach of fiduciary duty, misappropriation, unjust enrichment, tortious interference with both an existing contract and prospective contracts, conversion, and conspiracy.[3] Rhone entered a general denial and filed a counterclaim for liquidated damages, alleging that the seller(s) failed to comply with Chapter 9 of the Texas Business and Commerce Code.

Although a jury panel had been called, the trial court held a hearing before the court. After admitting the agreement into evidence, but prior to either party presenting their respective cases in

---

[1]For the purposes of this opinion, we make reference to the plaintiff/appellants as "Donald and Moore," unless it is important that we discuss something specific regarding Summit Spring Water Company, Inc.

[2]Donald, Moore, and Summit named Brian Rhone, BMR Distributing, Inc., Chris Rhone, and Rhone Water Company, Inc., doing business as Frosty's Water, as defendants below. We refer to them, collectively, as "Rhone."

[3]Donald and Moore also sought to enjoin Rhone from utilizing water bottles and sales routes obtained through the agreement. The trial court later granted a temporary restraining order and injunction.

3

chief, Rhone moved to dismiss the suit of Donald and Moore, arguing (1) that Summit was the proper plaintiff in the case, (2) that under the Texas Tax Code, Summit could not assert claims on its own behalf or defend claims against it because its corporate charter had been forfeited, and (3) that the individual claims of Donald and Moore were "derivative of and through Summit" as they were "agents of the corporation." Rhone went on to argue that if Summit could not pursue its claims, Donald and Moore would likewise be barred from asserting them.[4] In response, Donald and Moore pointed out that they, individually, were the only named sellers in the agreement and that Summit's name did not appear in the agreement, because, they argued, Summit had previously transferred or sold the assets to them in their individual capacities. Pressing this position, they maintained that they were proper parties with claims, in their individual capacities, against Rhone.

After hearing the parties' arguments, the trial court granted a directed verdict in favor of Rhone as to all of Donald's and Moore's claims. It is apparent from the findings of fact and conclusions of law that despite the issues in dispute, the complete absence of testimony and the lack of documentary evidence, other than the agreement itself, the trial court granted the directed verdict because it found that: (a) Donald and Moore signed the agreement in their capacities as shareholders, directors, and officers of Summit; (b) Summit was the seller under the agreement and the true party in interest in this case; (c) Donald and Moore, in their individual capacities,

---

[4]In support of its argument that Donald and Moore acted solely as Summit's agents, Rhone pointed out that there was "no live pleading that ever [said Donald and Moore] bought the assets" from Summit and that in the Appellants' motion for partial summary judgment, which was later withdrawn without decision, the affidavits of Donald and Moore stated that they were officers of Summit. However, as noted in Rhone's brief, a party's prior pleadings are not indisputable judicial admissions, *Sosa v. Central Power & Light*, 909 S.W.2d 893, 895 (Tex. 1995) (per curiam), and a party's prior testimonial declarations contrary to its position at trial are quasi-admissions, but are not conclusive. *Hennigan v. I.P. Petroleum Co.*, 858 S.W.2d 371, 372 (Tex.1993) (per curiam).

4

lacked grounds upon which to sue Rhone; (d) since Summit's corporate charter had been forfeited about nine months after suit was filed (and remained dormant), Sections 171.252 and 171.253 of the Texas Tax Code prohibited Summit from "assert[ing] affirmative claims in a court of law [or] defend[ing] claims or defenses against it";[5] and (e) therefore, Rhone was entitled to summary judgment on Summit's claims and Summit could not assert any defenses to Rhone's counterclaim.

After the directed verdict was granted, the trial court allowed Donald and Moore to put on brief testimony "[l]ike a bill of review" regarding the ownership of the assets.[6] Donald testified that she and Moore transferred the assets from Summit to themselves in July 2006, about six months prior to the agreement. Despite ordering the directed verdict prior to Donald's testimony, the trial court's findings of fact found Donald's testimony "to be incredible and unsubstantiated."

After a brief hearing pertaining to Rhone's counterclaim in which both Donald and Moore testified regarding whether the sellers under the sales agreement complied with the repossession, sale, and deficit provisions of Article 9, the trial court awarded Rhone $1,000.00 in liquidated damages and substantial attorney fees through trial and appeal.

---

[5]The cited provisions of the Tax Code provide that a corporation with a forfeited charter "shall be denied the right to sue or defend" and that "[i]n a suit against a corporation on a cause of action arising before forfeiture[,] . . . affirmative relief may not be granted to the corporation unless its corporate privileges are revived." TEX. TAX CODE ANN. §§ 171.252–.253 (West 2015). We note that the trial court's holding fails to take into account Section 11.356 of the Texas Business Organizations Code, a more recent statute, which provides that a corporation terminated by forfeiture of its charter continues to exist beyond its termination for the limited purposes of prosecuting or defending, in its own name, a legal action brought by or against it, that arose prior to the forfeiture. TEX. BUS. ORGS. CODE ANN. § 11.356(a)(1) (West 2012); see Endsley Elec., Inc. v. Altech, Inc., 378 S.W.3d 15, 26 (Tex. App.—Texarkana 2012, no pet.). Under Section 11.356(a) and (c), a terminated corporation can function for this limited purpose for three years, though if an action is brought by or against the corporation within that three-year period, the corporation's existence can continue indefinitely until the provisions of subsection (c) are satisfied. TEX. BUS. ORGS. CODE ANN. § 11.356(a), (c) (West 2012).

[6]While the findings of fact state that the directed verdict was granted after the court heard "testimony from witness [sic] called by the Plaintiff to refute the fact that Summit . . . was the true Plaintiff in this case," the record conclusively shows that the trial court orally granted and reaffirmed the directed verdict prior to any testimony.

Donald and Moore have appealed, contending that the trial court erred in: (1) granting a directed verdict disposing of all their claims prior to trial; (2) awarding Rhone liquidated damages because there was insufficient evidence that the agreement was a secured transaction; and (3) awarding attorney fees without statutory authorization.

We reverse the trial court's judgment and remand the case for further proceedings because the trial court erred in granting a pretrial directed verdict.

## III.    Directed Verdict Before Presentation of Case

In their first point of error, Donald and Moore contend that the trial court erred in granting a directed verdict before they had an opportunity to present their case.

We review a trial court's directed verdict de novo. *Fin & Feather Club v. Leander*, 415 S.W.3d 548, 551 (Tex. App.—Texarkana 2013, pet. denied). Granting a directed verdict before any party has rested is very unusual. In most circumstances, it is reversible error to direct a verdict before the opposing party has presented all of its evidence and has rested. *Tana Oil & Gas Corp. v. McCall*, 104 S.W.3d 80, 82 (Tex. 2003) (citing *Wedgeworth v. Kirskey*, 985 S.W.2d 115, 115 (Tex. App.—San Antonio 1998, pet. denied)); *State Office of Risk Mgmt. v. Martinez*, 300 S.W.3d 9, 11 (Tex. App.—San Antonio 2009, pet. denied) (holding directed verdict should not ordinarily be granted before opposing party has had full opportunity to present its case); *Nassar v. Hughes*, 882 S.W.2d 36, 38 (Tex. App.—Houston [1st Dist.] 1994, writ denied). However, in *Tana Oil & Gas*, the Texas Supreme Court held that granting a directed verdict before the plaintiffs rested was harmless error in that case because, even had the plaintiffs fully proven their claims, they would not have been able to recover since the plaintiffs affirmatively limited their claims to damages they

6

could not recover as a matter of law. *See Tana Oil & Gas Corp.*, 104 S.W.3d at 82; *see also Double Ace, Inc. v. Pope*, 190 S.W.3d 18, 26 (Tex. App.—Amarillo 2005, no pet.); *Rudolph v. ABC Pest Control, Inc.*, 763 S.W.2d 930, 932 (Tex. App.—San Antonio 1989, writ denied). The *Tana Oil & Gas* court stressed that under this exception, the basis for directed verdict had nothing to do with an assessment of the trial evidence. *See Tana Oil & Gas Corp.*, 104 S.W.3d at 82.

Having reviewed the record, we find that the directed verdict in this case does not fall within the *Tana Oil & Gas* exception. Here, Donald and Moore did not affirmatively limit their claims to damages or relief they were barred as a matter of law from recovering. *See* TEX. BUS. ORGS. CODE ANN. § 11.356(a), (c); *see also Tana Oil & Gas*, 104 S.W.3d at 82–83; *Endsley Elec., Inc.*, 378 S.W.3d at 26. Moreover, at the time the trial court granted the directed verdict, the court lacked conclusive evidence that Donald and Moore executed the agreement as shareholders, directors, or officers of Summit, and there was no evidence before the court that Summit's corporate charter had been forfeited "on or about July 24, 2009."[7]

## IV.    Conclusion

Based on the foregoing, we find that the trial court erred in granting a directed verdict prior to Donald and Moore having had a full opportunity to present their case. *See Tana Oil & Gas Corp.*, 104 S.W.3d at 82–83.

Accordingly, we reverse the trial court's judgment and remand the case for further proceedings. Because Donald and Moore stated a claim for fraud in the inducement, which is a

---

[7]Although the record contains a document from the Office of the Texas Secretary of State stating that Summit's corporate charter was forfeited on July 24, 2009, that document was never admitted into evidence in this case. Moreover, the file stamp indicates that it was filed in the district clerk's office at 3:20 p.m. on the day the judgment was rendered; its filing appears to have been either contemporaneous with or after the directed verdict was granted.

defense to Rhone's contract-based counterclaim, we need not address the remaining points of error.[8]

Bailey C. Moseley<br>Justice

Date Submitted:    February 12, 2016
Date Decided:    April 14, 2016

---

[8]Rhone argues that Donald and Moore failed to preserve the issues regarding Rhone's counterclaim and attorney fees. However, our ruling regarding the directed verdict renders Rhone's argument moot.